GLIDDEN COMPANY, Appellee,

v.

HM HOLDINGS, INC. et al., Appellants.

GLIDDEN COMPANY, Appellant,

v.

HM HOLDINGS, INC. et al., Appellees.

[Cite as *Glidden Co. v. HM Holdings, Inc.* (1996), 109 Ohio App.3d 721.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

Nos. 68765 and 69061.

Decided March 11, 1996.

*Thompson, Hine & Flory, George A. Karch, Jr., Suzanne Bretz Blum, Thomas J. Collin* and *Harry A. Hanna,* for Glidden Company.

*Porter, Wright, Morris & Arthur, Richard M. Markus* and *Margaret M. Koesel,* for HM Holdings, Inc. and Hanson PLC.

PATTON, Judge.

This appeal arises from a declaratory judgment action filed by plaintiff Glidden Company ("Glidden") in which it sought a declaration of its rights to be indemnified for environmental claims by defendants HM Holdings, Inc. and Hanson PLC. The trial court dismissed the action, specifically declining to exercise jurisdiction over the matter. Glidden appeals from that ruling in case No. 69061. The trial court also denied defendants' motion to disqualify Glidden's counsel, the law firm of Thompson, Hine & Flory, finding no conflict of interest sufficient to justify disqualification. HM Holdings, Inc. and Hanson PLC appeal from that ruling in case No. 68765. We have consolidated both appeals for hearing and disposition.

The underlying facts are not at issue. Glidden manufactures and sells paint and other coatings. Prior to 1986, Glidden was called HSCM-6, Inc. A company named HSCM-20, Inc. (the predecessor of HM Holdings, the American arm of Hanson Trust PLC, a United Kingdom holding company) held all shares of HSCM-6. Pursuant to the terms of a purchase agreement signed in August 1986, HM Holdings sold HSCM-6 to Glidden's corporate parent, ICI American Holdings, Inc. ("ICIAH"). Under section 9.1(b) of the purchase agreement, Hanson Trust agreed to hold ICIAH and its subsidiaries harmless from any claims arising out of environmental events or conditions relating to HSCM-6.

Sometime after the sale, disputes arose concerning the scope of the indemnity provisions of the agreement. Hanson claimed that the indemnity provision required it to indemnify claims filed within eight years of the agreement; Glidden claimed that the indemnity agreement extended to any claims occurring within an eight-year period, regardless whether the claim had been filed in a court or by other proceedings.

When settlement discussions failed, HM Holdings filed a declaratory judgment action in the Supreme Court of New York, Commercial Part, seeking a declaration of its rights and obligations under the agreement. One week later, Glidden filed this action in the Cuyahoga County Court of Common Pleas. Both actions asked the courts to declare the rights of the parties under the agreement.

HM Holdings subsequently filed a motion to dismiss the Ohio declaratory judgment action and a motion to disqualify Glidden's counsel. The motion to dismiss argued that (1) the Ohio court lacked personal jurisdiction over HM Holdings; (2) the doctrine of *forum non conveniens* dictated that the dispute should be resolved by the New York court; and (3) Glidden failed to join a necessary party. The motion to disqualify noted that Glidden's counsel also represented HM Holdings subsidiaries and cited DR 5-105 as authority for its claim that the firm's multiple employment would impair the firm's exercise of independent professional judgment.

In a written opinion, the trial court denied the motion to disqualify. Although finding that the firm had, in fact, represented HM Holdings subsidiaries in the past, the court found that those subsidiaries operated independently from HM Holdings and, in any event, HM Holdings failed to show a substantial relation between the pending cause of action and the other actions.

The trial court granted the motion to dismiss and the separate appeals followed.

Glidden's assignment of error complains that the trial court erred by resisting imposition of its own jurisdiction since the court otherwise had personal and subject-matter jurisdiction over the matter.

■ As a preliminary matter, the parties dispute the meaning of the dismissal order. The order states:

"Pursuant to the defendant's motion to dismiss for lack of personal jurisdiction, this court shall resist imposition of its own jurisdiction and dismiss the within cause."

Glidden maintains that the order indicates that the court found it lacked personal jurisdiction over HM Holdings, a decision we should review *de novo* for an error of law. HM Holdings maintains that the order should be read to indicate that the court declined to accept jurisdiction on grounds of *forum non conveniens,* a decision reviewable for an abuse of discretion.

The trial court clearly based the dismissal on the doctrine of *forum non conveniens.* In *Chambers v. Merrell–Dow Pharmaceuticals, Inc.* (1988), 35 Ohio St.3d 123, 519 N.E.2d 370, paragraph one of the syllabus states:

"The common-law doctrine of *forum non conveniens* is committed to the sound discretion of a court of general jurisdiction, and may be employed pursuant to the inherent powers of such court to achieve the ends of justice and convenience of the parties and witnesses." (Citations omitted.)

Stated otherwise, the doctrine of *forum non conveniens* "is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." *Id.* at 126, 519 N.E.2d at 372–373, citing *Gulf Oil Corp. v. Gilbert* (1947), 330 U.S. 501, 507, 67 S.Ct. 839, 842, 91 L.Ed. 1055, 1061–1062; *Morton Internatl., Inc. v. Harbor Ins. Co.* (1992), 79 Ohio App.3d 183, 607 N.E.2d 28.

Obviously, the trial court used the *forum non conveniens* language from *Chambers* in its journal entry. We can think of no clearer manifestation of intent to base a dismissal on *forum non conveniens.*[1]

■ The issue is whether the court abused its discretion by dismissing the action. In *Salabaschew v. TRW, Inc.* (1995), 100 Ohio App.3d 503, 506, 654 N.E.2d 387, 389, we stated:

"In analyzing a motion to dismiss for *forum non conveniens,* a trial court must weigh a number of public and private interests. The weight to be given each

---

1. Had the court's journal entry failed to quote language from *Chambers,* we would nonetheless find the dismissal based upon *forum non conveniens.* Construing the order like any other written instrument, *Hines v. Aetna Cas. & Sur. Co.* (Jan. 9, 1992), Cuyahoga App. No. 59600, unreported, at 12, 1992 WL 2588, the word "resist" in its ordinary usage means to withstand the force or effect of something. The court's use of the word "resist" would only have meaning if it believed it had jurisdiction but declined to exercise that jurisdiction under the circumstances. *Hughes v. Scaffide* (1978), 53 Ohio St.2d 85, 87, 7 O.O.3d 175, 176, 372 N.E.2d 598, 600–601.

factor depends largely upon the facts of each case. *Williams v. Green Bay & W. Ry. Co.* (1946), 326 U.S. 549, 66 S.Ct. 284, 90 L.Ed. 311. Important private interests include access to sources of proof, availability of compulsory process for attendance of unwilling witnesses, location of willing witnesses, and enforceability of a judgment if one is obtained. Public interest factors to be considered include administrative difficulties and delay to other litigants caused by congested court dockets, the imposition of jury duty upon citizens of the jurisdiction, and the appropriateness of litigating a case in a forum familiar with the applicable law."

The primary factor favoring dismissal is the identical declaratory judgment action HM Holdings previously filed in the New York court. Our review of the complaint in that case satisfies us that the New York action is identical in all meaningful respects to the Ohio action.

█ The general rule for the resolution of a conflict between two courts asserting concurrent jurisdiction over the same cause is that the tribunal whose power is invoked first acquires jurisdiction. *State ex rel. Phillips v. Polcar* (1977), 50 Ohio St.2d 279, 4 O.O.3d 445, 364 N.E.2d 33, syllabus; *State ex rel. Judson v. Spahr* (1987), 33 Ohio St.3d 111, 113, 515 N.E.2d 911, 913. While that rule is not precisely applicable here because the courts are in different states, it nonetheless expresses important policy designed to preserve judicial resources and prevent duplicative or piecemeal litigation.

More to the point, the parties have litigated the issues of disqualification of Glidden's counsel and *forum non conveniens.* In the New York case, the firm filed a motion for admission *pro hac vice.* HM Holdings opposed admission, apparently citing the same reasons it used in its motion to disqualify filed in the trial court. The hearing transcript shows that the trial judge knew that HM Holdings opposed the firm's admission, but the New York court had not yet ruled on the motion.

HM Holdings has supplemented the record by appending a copy of the New York court's order denying the firm's motion for admission *pro hac vice,* as well as the appellate decision affirming that order. However, the trial court did not have knowledge of those orders when it granted the motion to dismiss. Since we review the trial court's actions for an abuse of discretion, we must confine ourselves to the record existing at the time the trial court dismissed the complaint.

Nevertheless, the trial court did not need knowledge of the New York decisions in order to justify dismissing Glidden's action. Being aware that identical motions were pending in a similar action in another court of competent jurisdiction provided ample justification to find that the declaratory judgment action should proceed in New York, the jurisdiction where the issues were first joined.

Finally, the trial court could reasonably conclude that the state of New York is a better forum for this action. The parties are United Kingdom corporations with United States subsidiaries. They signed the agreement in New York and provided that New York law would govern in the event that they disputed the terms of the agreement. They expressly consented to make their witnesses available in New York should the need arise, and the record suggests that those witnesses are located in the New York metropolitan area.

It is important to note that Glidden was not a signatory to the agreement and, while it may be a subject of the agreement, the agreement does not grant third-party-beneficiary rights to Glidden.

Glidden points to several factors weighing against the dismissal: it would be more convenient for Glidden to litigate this matter in Ohio where its headquarters and counsel are located; HM Holdings' witnesses do not reside in New York; the agreement has been performed in Ohio where it has manufacturing plants; and its choice of forum should not be disturbed.

We find these factors unavailing. Above all, this declaratory judgment action seeks a declaration that HM Holdings violated the environmental indemnity provision of the agreement. This is a matter of contract construction concerning the duration of the indemnity clause. This issue should not depend in any way on the situs of Glidden's manufacturing facilities (many of which are located outside Ohio) or Glidden's employees (only a portion of whom are headquartered in Cleveland). Those factors are properly addressed to personal jurisdiction, a fact we assume without deciding for purposes of this appeal.

In conclusion, we cannot say that the trial court acted unreasonably or arbitrarily by dismissing the action. We find that the court reasonably considered the public benefit of terminating identical actions and allowing the first filed to proceed alone significantly outweighs Glidden's private interest in having the case heard in the Ohio courts. Glidden's assignment of error is overruled. Our disposition necessarily moots consideration of HM Holdings' assignment of error in case No. 68765, relating to Thompson, Hine & Flory's disqualification.

*Judgment affirmed.*

HARPER, P.J., and JAMES D. SWEENEY, J., concur.