HESS et al., Appellees,

v.

**NORFOLK SOUTHERN RAILWAY COMPANY, Appellant.**

[Cite as *Hess v. Norfolk S. Ry. Co.,* 153 Ohio App.3d 565, 2003-Ohio-4172.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 80717.

Decided Aug. 7, 2003.

566

Wallace and Graham, P.A., and Christopher J. Hickey; Kevin E. McDermott and Mary Brigid Sweeney, for appellees.

Gallagher, Sharp, Fulton & Norman, Kevin C. Alexandersen, Michael J. Pike and Monica A. Sansalone; Burns, White & Hickton and David A. Damico, for appellant.

FRANK D. CELEBREZZE, JR., Judge.

{¶ 1} The appellant, Norfork Southern Railway Company, appeals from several interlocutory rulings made by the trial court during asbestos litigation and seeks a review of the jury verdict entered in favor of the appellees.

{¶ 2} On August 25, 1999, a Master Consolidated Complaint was filed in the Cuyahoga County Court of Common Pleas pursuant to the Federal Employers Liability Act ("FELA") against Norfolk Southern Railway Company [1] (hereinafter "Norfolk" or "appellant"), on behalf of 27 employees who allegedly sustained injury as a result of asbestos exposure while working at the Spencer Railroad Shop in North Carolina. The following appellees, Lee McAdoo Hess [2] (case No. 398614), Charlie Leon Miller (case No. 390336), Lester L. Poe Sr. (case No. 390352), and Baxter Lovelace Wyatt (case No. 390337) ("appellees"), were consolidated for the purpose of trial pursuant to Civ.R. 42(A). Appellees Poe, Miller, and Wyatt died from lung cancer [3] prior to trial. Appellee Hess died from lung cancer shortly after the conclusion of the trial.

---

1. Norfolk Southern Railway Company is the successor to the Southern Railway Company.

2. Lee McAdoo Hess filed his complaint on December 16, 1999.

3. *Death certificates entered into evidence listed the cause of death as lung cancer.* See appellee's Exhibit 1.

{¶ 3} The consolidated trial commenced on October 1, 2001. The jury returned individual verdicts in favor of the appellees on October 15, 2001. The appellant thereafter filed a motion for a new trial or in the alternative a motion for remittitur of damages. The appellees filed a motion for additur. The appellant's motion for a new trial was denied and the motion for remittitur was granted. Appellee Poe's motion for additur was also granted.

{¶ 4} On December 7, 2001, the trial court amended the jury's damage award as follows:

{¶ 5} The jury awarded Hess $1,070,000, which was reduced because of a remittitur of $129,004.11 in medical expenses. The jury found Norfolk was 75 percent responsible for Hess's injuries. The total award given to Hess was $705,746.92.

{¶ 6} The jury awarded the estate of Miller $510,000, which was reduced because of a remittitur of $12,292.23 in medical expenses. The jury found Norfolk 50 percent responsible for Miller's injuries. The total award given to the estate of Miller was $248,853.88.

{¶ 7} The jury awarded the estate of Poe $570,000, which was increased by an additur of $74,687.38 in medical expenses. The jury found Norfolk 50 percent responsible for Poe's injuries. The total award given to the estate of Poe was $322,243.69.

{¶ 8} The jury awarded the estate of Wyatt $905,000, which was reduced because of a remittitur of $124,966.42 in medical expenses. The jury found Norfolk 75 percent responsible for Wyatt's injuries. The total award given to the estate of Wyatt was $585,025.18.

{¶ 9} The appellant presents eight assignments of error for this court's review.

{¶ 10} "I. The trial court erred when it overruled appellant's motion to dismiss on the ground of forum non conveniens."

{¶ 11} After the Master Complaint was filed, the appellant moved the trial court to dismiss the case based on forum non conveniens. Appellant argued that the proper venue was North Carolina, not Ohio, because the appellees' medical information, trial witnesses, and the railroad work sites at issue were located in North Carolina. The trial court overruled the motion, holding that the appellant does conduct business in Cuyahoga County, Ohio, fulfilling FELA requirements, and based on the evidence submitted, the forum was not inconvenient.

{¶ 12} All four appellees resided outside Ohio. The appellees were employed by the appellant for various positions in Spencer, North Carolina. The appellant is a Virginia corporation. Under the Federal Employers' Liability Act ("FELA"), Section 56, Title 45, U.S.Code (2003), "an action may be brought in a district

court of the United States, in the district of the residence of the defendant or in which the cause of action arose, or in which the defendant shall be doing business at the time of commencing such action. The jurisdiction of the courts of the United States under this chapter shall be concurrent with that of courts of the several States." FELA permits the filing of an action by an injured railroad worker wherever the railroad conducts business. The trial court took judicial notice that Norfolk does business in Cuyahoga County, Ohio; therefore, under FELA, jurisdiction and venue are proper.

{¶ 13} In *Chambers v. Merrell–Dow Pharmaceuticals, Inc.* (1988), 35 Ohio St.3d 123, 519 N.E.2d 370, the Supreme Court of Ohio adopted the doctrine of forum non conveniens, which provides that, notwithstanding proper jurisdiction and venue, a trial judge has discretion not to exercise jurisdiction if the forum is seriously inconvenient for trial and if a more appropriate forum is available to the plaintiff. Id. The doctrine is designed to prevent a plaintiff from using a liberal venue statute to vex, oppress, or harass a defendant by bringing a suit in a forum unrelated to the parties or cause of action. *Gulf Oil Corp. v. Gilbert* (1946), 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055. A plaintiff's choice of forum is not to be disturbed except for "weighty reasons," and the case should be dismissed only if the balance is strongly in favor of defendant. Id.

{¶ 14} The determination as to whether there is a more convenient forum for a given case is left to the sound discretion of the trial court. *Chambers,* supra. The decision of the trial court as to whether there is a more convenient forum for a given case will be reversed only upon a clear abuse of discretion. Id.

{¶ 15} To constitute an abuse of discretion, the ruling must be more than legal error; it must be unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140. " 'The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations.' " *State v. Jenkins* (1984), 15 Ohio St.3d 164, 222, 15 OBR 311, 473 N.E.2d 264, quoting *Spalding v. Spalding* (1959), 355 Mich. 382, 384–385, 94 N.W.2d 810. In order to have an abuse of that choice, the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias. Id.

{¶ 16} In determining whether there is a more convenient forum for the case before it, a trial court must balance all relevant public and private interest factors. The public interest factors include (1) the administrative difficulties and delay to other litigants, (2) the imposition of jury duty upon the citizens of a community that has very little relation to the litigation, (3) a local interest in

having localized controversies decided at home, and (4) the appropriateness of litigating a case in a forum familiar with the applicable law. Id.

{¶ 17} Private interest factors include (1) the relative ease of access to sources of proof, (2) the availability of compulsory process for attendance of unwilling witnesses, (3) the cost of attaining willing witnesses, (4) the possibility of a view of the premises, if a view would be appropriate in the action, and (5) all other practical problems that make trial of a case easy, expeditious, and inexpensive. Id. The weight given to any of these factors depends on the particular facts of each case. *Glidden Co. v. HM Holdings, Inc.* (1996), 109 Ohio App.3d 721, 672 N.E.2d 1108. Appellant claims that the forum of Cuyahoga County, Ohio, was inconvenient for the reasons set forth below.

{¶ 18} First, we look at the public interest factors set forth by appellant. Appellant claims that Ohio should not bear the costs to manage and litigate cases with no connection to this jurisdiction because asbestos litigation has taxed the resources of this court and has the potential effect of denying Ohio citizens access to Ohio courts. Also, Ohio should have no concern about a case in which North Carolina citizens were injured by the appellant. FELA gives plaintiffs the statutory right to bring suit in any jurisdiction in which the railroad conducts business, and this court is bound to follow federal law. It is in the trial court's discretion to determine whether its docket is full or the resources of the court will be taxed in hearing the case.

{¶ 19} In the instant matter, the trial court had the ability to dismiss the action for forum non conveniens and, in its discretion, chose not to. The Common Pleas Court of Cuyahoga County has streamlined asbestos litigation and is extremely familiar with this area of law. Contrary to appellant's claim, Ohio courts and juries do have an interest in health and safety issues involving corporations that operate in our community.

{¶ 20} Next, this court examines the private interest factors set forth by appellant. Norfolk claims that it was forced to expend substantial time and money conducting discovery and trial depositions in North Carolina. The depositions of Lester Poe, Lee McAdoo Hess, Dr. Rachel Ross, Dr. James R. Cervin, Dr. Federick Dula, Dr. Stephen Proctor, Elizabeth Miller, Allene Poe, Dr. Neil Patel, and James Bailey were conducted in North Carolina by both the appellees and the appellant. However, depositions were taken and witnesses were also called from Ohio, Texas, British Columbia, and Virginia. Asbestos litigation is inherently complex, and witnesses are often spread across different states, making the cost of litigation immense. This court cannot comprehend how granting appellant's motion for forum non conveniens and reversing this case could remedy this alleged error. Appellant would be forced to recommence a

new trial in North Carolina and incur all the expenses associated with litigation a second time, defeating its own argument.

{¶ 21} Appellant argues that it was forced to file numerous motions to compel the production of pathology materials, medical records, and x-rays of the appellees from Rowan Regional Medical Center, which is located in Salisbury, North Carolina. However, the appellant fails to realize that the difficulty in obtaining these records would have been the same whether this suit was conducted in Ohio or in North Carolina. The trial court properly responded by granting the appellant's motions to compel against both the hospital and the appellees. The appellant obtained the requested discovery material for their experts without an unreasonable or prejudicial delay.

{¶ 22} Furthermore, this court notes that the transfer shed at the Spencer Yard where appellee Hess worked was destroyed years ago. The Spencer Backshop where appellees Poe, Miller, and Wyatt worked is off limits due to lead and asbestos contamination. A jury view of the Spencer Yards in North Carolina, where appellees worked, was not possible in this case.

{¶ 23} The appellant's claim that appellees were forum shopping by filing suit in Ohio is irrelevant according to the statutory intent of FELA.

{¶ 24} The trial court did not abuse its discretion in balancing the public and private interest factors and denying appellant's motion for forum non conveniens. Appellant's first assignment of error is hereby overruled.

■ {¶ 25} "II. The trial court erred in denying appellant's motion to separate claims and allowed four distinct cases to be consolidated for trial resulting in unfair prejudice to appellant."

{¶ 26} On October 23, 2000, appellant filed a motion to separate the claims of the four appellees. Norfolk argued that it would be unduly prejudiced if the trial court allowed these multiple claims to be litigated together in one trial because consolidation would confuse and commingle distinct issues of breach of duty, causation, expert examinations, and damages peculiar to each appellee's claim. The trial court denied appellant's motion and ordered a consolidated trial to proceed on all four claims.

■ {¶ 27} Ohio Civ.R. 42(A) permits a trial court to consolidate actions involving common questions of law or fact in order to avoid unnecessary costs or delay. *Teichman v. Weltman* (May 12, 1996), Cuyahoga App. Nos. 69003, 69005 and 69006, 1996 WL 221156. The decision whether to order consolidation lies within the sound discretion of the trial court. Id. at 12, citing *BancOhio Natl. Bank v. Schiesswohl* (1988), 51 Ohio App.3d 130, 554 N.E.2d 1362; *Fair v. School Employees Retirement Sys.* (1975), 44 Ohio App.2d 115, 73 O.O.2d 101, 335

N.E.2d 868. The trial court's decision on whether to consolidate actions will be upheld unless it constitutes a clear abuse of discretion. *Carpenter v. GAF Corp.* (Feb. 15, 1994), 6th Dist.App. Nos. 90–3460 and 90–3461, 16 F.3d 1218.

{¶ 28} This case contains common questions of law and fact proper for consolidation. Common issues of law and fact include the following: (1) each appellee was diagnosed with some form of lung cancer; (2) all appellees worked for Norfolk in Spencer, North Carolina. Appellee Wyatt worked at Spencer from 1935 through 1960, appellee Hess worked at Spencer from 1940 through 1984, appellee Poe worked at Spencer from 1950 through 1954 and again from 1985 through 1992, and, finally, appellee Miller worked at Spencer from 1944 through 1959; (3) all appellees claimed exposure to asbestos and asbestos-induced lung cancer while working for Norfolk at Spencer; (4) all appellees brought FELA actions; (5) Norfolk owed each appellee the same duty of care under FELA; (6) expert witnesses called by the appellee and appellant were similar for each case; (7) witnesses called by appellees related to all cases; and (8) evidence entered into the record pertaining to Norfolk and its Spencer operations was common to all appellees. After examining the facts above, we conclude that it was proper for the trial court to consolidate these four asbestos cases for litigation.

{¶ 29} Furthermore, the appellant's claim of reversible error on the basis that the jury could not distinguish among each of the individual appellees is unsubstantiated. Appellant claims that this error is evidenced by nearly identical damage awards for Hess and Wyatt as well as for Poe and Miller. The trial court permitted the jury to keep notebooks, and demonstrative summaries of facts were allowed for each appellee.[4] We disagree with appellant's assertion and find that the verdict itself is evidence that the jury could differentiate each appellee. Each appellee was awarded the following by the jury: appellee Hess was awarded $1,070,000 and assessed 25 percent contributory negligence; appellee Wyatt was awarded $905,000 and assessed 25 percent contributory negligence; appellee Miller was awarded $570,000 and assessed 50 percent contributory negligence; and, finally, appellee Poe was awarded $510,000 and assessed 50 percent contributory negligence.

{¶ 30} Although the jury verdicts are similar for appellees Hess and Wyatt as well as for appellees Miller and Poe, it should be noted that they are in fact distinct. From a review of the facts, there is evidence to suggest that the jury considered each of the appellees' smoking histories, lengths of employment at Spencer, and possible asbestos exposure, as well as other mitigating factors.

{¶ 31} Absent a showing of evidence to the contrary, we dismiss appellant's hypothetical assertions about how a juror could have been confused during trial.

---

4. The demonstrative facts were not allowed into evidence.

Appellant asserts that presenting four cases of lung cancer to the same jury predisposes the jury to find causation regardless of the evidence. Also, a juror might miss an important point while taking notes, write down the wrong note, or give undue emphasis to certain points written down while in deliberations. Appellant's hypothetical assertions attack the intelligence of jurors, which forms the basis of our legal system.

{¶ 32} The trial court did not abuse its discretion in consolidating these four cases for trial. Accordingly, appellant's second assignment of error is overruled.

{¶ 33} "III. The trial court erred by failing to exclude spoliated evidence which resulted in unfair prejudice to appellant."

{¶ 34} Before trial, appellees Miller, Poe, and Wyatt died. Counsel for the appellees requested that the family of each appellee execute a limited autopsy of the lungs and pleura. Appellant claims that because counsel for the appellees failed to notify it of the autopsies, the appellant missed a chance to conduct a full autopsy to determine the actual cause of death. As a result, the appellant moved to exclude, on the basis of spoliation of evidence, any testimony relevant to the alleged cause of death of the appellees. The trial court denied appellant's motion.

{¶ 35} Spoliation of evidence was recognized in Ohio as an independent tort in *Smith v. Howard Johnson Co.* (1993), 67 Ohio St.3d 28, 615 N.E.2d 1037. In *Smith,* the court delineated the elements for evidence spoliation: (1) pending or probable litigation involving the plaintiff, (2) knowledge on the part of the defendant that litigation exists or is probable, (3) willful destruction of evidence by the defendant designed to disrupt plaintiff's case, and (4) damages proximately caused by the defendant's acts.

{¶ 36} While *Smith* is confined to spoliation of evidence caused by the defendant injuring the plaintiff's case, *Cincinnati Ins. Co. v. Gen. Motors Corp.* (Oct. 28, 1994), 6th Dist. No. 94–OT–017, 1994 WL 590566, equally applies similar preservation duties to a plaintiff. *Cincinnati Ins.* was a products liability suit in which the plaintiff claimed that a faulty blower motor from a Buick automobile caused a fire that destroyed their home. The blower motor retrieved from the fire was altered and destroyed by the plaintiff's expert witness prior to litigation. It was determined that, absent the destroyed blower motor, the true cause of the fire could not be determined. The court held that, as a matter of sound public policy, experts should not be permitted, intentionally or negligently, to destroy such evidence and then substitute their own description of it. Id. The trial court correctly excluded all relevant testimony pertaining to the blower motor.

{¶ 37} The *Cincinnati Ins.* court stated that before defendants can enjoy a rebuttable presumption that they were prejudiced by the destruction of relevant evidence, they must first establish (1) that the evidence is relevant, (2) that the

plaintiff's expert had an opportunity to examine the unaltered evidence, and (3) that even though the plaintiff was contemplating litigation against the defendant, this evidence was intentionally or negligently destroyed or altered without providing an opportunity for inspection by the defense. Id. After establishing the above elements, the burden shifts to the plaintiff to show that there is no reasonable possibility that the lack of access to the unaltered or intact product deprived the defendant of favorable evidence otherwise unobtainable; that is, the defendant was not prejudiced. Id.

{¶ 38} In the instant matter, a full autopsy would have been relevant to the appellant's case if in fact it could have been proven that the appellees died of something other than lung cancer. Second, both the appellant's and appellees' experts examined the lung tissue samples. There is no claim by the appellant that the lung tissue samples had been destroyed or altered. There is no evidence to show that appellees conducted a full autopsy and failed to allow appellant's experts to examine the bodies. Third, and most important, appellant fails to present evidence that the bodies were intentionally or negligently altered or destroyed before they could be examined by the appellant. The bodies were buried, not cremated. At the time of trial, the bodies of the deceased appellees could have been exhumed and additional autopsies conducted. We reject the appellant's hypothetical argument that the families of the appellees could have prevented the bodies from being exhumed.

{¶ 39} Independent evidence pertaining to the cause of death of each of the appellees was established by their individual death certificates, through testimony from expert witnesses, and through their medical records. It would have been improper for the trial court to exclude all evidence as to the cause of death simply because a full autopsy had not been completed. The lung tissue samples were presented to show that the appellees had exposure to asbestos, not as definitive proof of their causes of death. The appellant had ample and equal access to the tissue-sample evidence.

{¶ 40} Appellant has failed to establish the elements for spoliation of evidence; therefore, it is not entitled to a rebuttable presumption of prejudice. The trial court did not err in failing to exclude evidence as to the cause of death of each appellee. Appellant's third assignment of error is without merit.

■ {¶ 41} "IV. The trial court erred in precluding appellant from introducing evidence that the manufacturers of asbestos products made representations to appellant, and other users, that their products were safe; but allowed appellees to introduce studies that did not relate or in any way reference the railroad for the purpose of establishing that these studies provided notice to the railroad that asbestos exposure could pose a harm to its workers which unfairly prejudiced appellant."

{¶ 42} During trial, the appellant attempted to introduce evidence that the manufacturers of asbestos-containing products provided information that such products were safe. Appellant offered information contained in pamphlets it received from asbestos manufacturers through its expert witness, Dr. Weir. The pamphlets themselves were not presented to the court for review. The trial court ruled that testimony about the pamphlets was inadmissible hearsay. The appellant contends that because this information was excluded, the appellees should also have been precluded from introducing studies through Dr. Lemen showing that the appellant should have known about the dangers of asbestos.

{¶ 43} The admission or exclusion of evidence rests generally within the sound discretion of the trial court. *Wightman v. Consol. Rail Corp.* (1999), 86 Ohio St.3d 431, 715 N.E.2d 546. Irrelevant evidence is not admissible under Evid.R. 402, and under Evid.R. 403(A), relevant evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or of misleading the jury.

{¶ 44} "Exclusion on the basis of unfair prejudice involves more than a balance of mere prejudice. If unfair prejudice simply meant prejudice, anything adverse to a litigant's case would be excludable under Rule 403. Emphasis must be placed on the word 'unfair.' Unfair prejudice is that quality of evidence which might result in an improper basis for a jury decision. Consequently, if the evidence arouses the jury's emotional sympathies, evokes a sense of horror, or appeals to an instinct to punish, the evidence may be unfairly prejudicial. Usually, although not always, unfairly prejudicial evidence appeals to the jury's emotions rather than intellect." *Hampton v. St. Michael Hosp.* Cuyahoga App. No. 81009, 2003-Ohio-1828, 2003 WL 1848772, ¶ 55, citing Weissenberger's Ohio Evidence (2000) 85–87, Section 403.3.

{¶ 45} A trial court's decision to exclude evidence is not grounds for reversal unless the record clearly demonstrates an abuse of discretion in so ruling that the complaining party has suffered a material prejudice. *Columbus v. Taylor* (1988), 39 Ohio St.3d 162, 529 N.E.2d 1382.

{¶ 46} We will first address appellant's claim that the information contained in the pamphlet showing the safety of asbestos products should have been admitted. The testimony of Dr. Weir goes directly to the knowledge and notice of the appellant regarding the safety of the asbestos products at issue. Clearly, any evidence that the asbestos manufacturers either did or did not provide adequate warnings to Norfolk regarding the health risks of asbestos goes directly to the issue of foreseeability. However, to introduce a pamphlet into evidence to prove the actual knowledge of the appellant requires that a proper foundation be laid. The trial court excluded introduction of this evidence, stating, "If he had a

circular in the hands of a railroad person who said he got, and relied on it and bought the product, it's in. This is hearsay, it's out."

{¶ 47} A proper foundation would include a witness from Norfolk who had actual knowledge of the following: who at the railroad received the pamphlet, when the pamphlet was received, and whether Norfolk relied on the information in the pamphlet. Clearly, because he lacked actual knowledge pertaining to the pamphlet, the appellant's expert is not the proper witness to introduce information contained in a pamphlet that was supposedly given to "someone" at Norfolk, proclaiming that asbestos products were safe. This foundation is even more important in this case because the actual pamphlets were never produced to the trial court as evidence. Furthermore, the trial court would have admitted this evidence if introduced through a proper witness and with a foundation to prove its reliability. Even so, the trial court did permit the appellant to question witnesses as to whether asbestos products they were using while employed at Norfolk contained warning labels.

{¶ 48} Next we will address appellant's claim that the testimony of Dr. Lemen should have been excluded. Appellant claims that the testimony of Dr. Lemen concerning the dangers of asbestos did not relate or refer to Norfolk for the purposes of proving that Norfolk could have known asbestos would harm its workers. In addition, the appellant claims that the testimony of Dr. Lemen was highly prejudicial and should have been excluded.

{¶ 49} FELA requires the appellees to prove that Norfolk knew or should have known about the dangers of asbestos. Dr. Lemen gave testimony on case reports from the early 1930s that indicated that asbestos posed a health risk to workers in the asbestos industry, textile industry, insulation industry, and the construction trades. The purpose of Dr. Lemen's testimony was to show that scientific and medical information about the hazards of asbestos was readily available since the early 1900s to employers like Norfolk.

{¶ 50} Dr. Lemen's testimony was based on a scientific evaluation of a readily available body of knowledge as to what different industries knew about asbestos. These publications, which documented asbestos-related diseases, were circulated throughout the scientific, medical, and industrial communities. Such evidence could be used to show that an employer like Norfolk could have known that asbestos caused diseases in people who worked around it. According to Dr. Lemen, by the 1940s, it was known that asbestos caused lung cancer. Accordingly, documents were admitted into evidence through the testimony of Dr. Lemen, which were obtained from the Association of American Railroads ("AAR"). The appellees submitted historical documents into evidence from the medical and surgical sections of the AAR to demonstrate Norfolk's reliance on medical and scientific studies. These physicians provided medical care to Norfolk's workers

and kept themselves informed of the current scientific and medical studies and advances. Clearly, Norfolk could have known at that time what different industries knew about the dangers of asbestos.

{¶ 51} That a study did not come from the railroad industry until 1983, which stated that exposure to asbestos is harmful to one's health, does not give the railroad the right to hide its head in the sand and pretend that asbestos exposure was not known to be harmful for the past 43 years. What other industries knew, published, and circulated about the dangers of asbestos, the railroad also should have known. Appellant's fourth assignment of error is overruled.

{¶ 52} "V. The trial court erred in failing to allow apportionment of liability of damages under FELA and by not allowing setoffs."

{¶ 53} The appellant claims that the trial court erred by failing to allow apportionment of liability and setoffs against asbestos-producing manufacturers. The appellant proposed a jury instruction that would have permitted the jury to apportion liability between the railroad's negligence in exposing appellees to asbestos during their employment and the contributory conduct of the entities that manufactured the asbestos products.

{¶ 54} Appellant sets forth the following FELA argument: "Every common carrier by railroad * * * shall be liable in damages to any person suffering injury while he is employed by such carrier * * *." Section 51, Title 45, U.S.Code. The appellant interprets the statutory language to mean that railroads are not liable for employee injuries that result from outside causes. The appellant further states that Section 1 requires that the railroad- and nonrailroad-related causes be separated and that the railroad be held liable for only that portion of the injury caused by its own negligence. Recent case law from the United States Supreme Court explains the issue of apportionment.

{¶ 55} In *Norfolk & W. Ry. Co. v. Ayers* (2003), 538 U.S. ——, 123 S.Ct. 1210, 155 L.Ed.2d 261, the Supreme Court unanimously held, "Under the FELA, an employee who suffers an 'injury' caused 'whole or in part' by a railroad's negligence may recover his or her full damages from the railroad regardless of whether the injury was also caused 'in part' by the actions of a third party." Id. 538 U.S. ——, 123 S.Ct. at 1228, 155 L.Ed.2d 261. According to the Supreme Court, appellant's interpretation of FELA runs counter to a century of jurisprudence. No FELA decision made by the Supreme Court so much as hints that the statute mandates apportionment of damages among potentially liable tortfeasors. The court further states that reading FELA to require apportionment would handicap plaintiffs and could vastly complicate adjudications. FELA allows an injured worker to recover his entire damages from the railroad whose negligence

jointly caused an injury, thus placing on the railroad the burden of seeking contribution from other tortfeasors.

{¶ 56} The only apportionment of damages under FELA that the appellant is entitled to receive is from the contributory negligence of the employee. In the instant matter, appellant received the appropriate apportionment. Each of the appellees' jury awards was reduced by the fact that each employee smoked cigarettes for a period of time. FELA expressly directs apportionment of responsibility between employer and employee based on comparative fault. The statute expressly prescribes no other apportionment. FELA does not authorize apportionment of damages between railroad and non-railroad causes.

{¶ 57} Appellant is not entitled to a setoff or to contribution unless the judgment imposes joint and several liability among joint tortfeasors for the same injury or loss. R.C. 2307.31(A). In the instant matter, no finding for setoff can be made because asbestos manufacturers were not codefendants in this matter, were not adjudicated liable, and did not admit liability. Appellant is the sole defendant. Appellant's fifth assignment of error is without merit.

{¶ 58} "VI. The trial court erred when it instructed that appellees were to recover damages for loss of enjoyment of life in conjunction with pain and mental anguish in contravention of *Dugas v. Kansas City S.R. Lines* (5th Cir.1973), 473 F.2d 821."

{¶ 59} Appellant claims that the jury instruction issued by the trial court allowed the jury to consider "loss of enjoyment of life" separate and apart from pain, suffering, and mental anguish. Appellant claims that this instruction allowed the appellees double recovery for their injuries. As a result of the instruction, the appellant claims that it is impossible to determine the amount of damages the jury awarded for pain, suffering, and mental anguish, as separate from the amount awarded for loss of enjoyment of life; therefore, it is entitled to a new trial.

{¶ 60} Appellant relies on *Dugas v. Kansas City S. Ry. Lines* (C.A.5, 1973), 473 F.2d 821, certiorari denied, for the proposition that under FELA, loss of enjoyment of life is to be included as part of a pain and suffering damage award. The *Dugas* court examined the following jury charge:

{¶ 61} "Such physical pain, mental anguish and loss of enjoyment of life as the plaintiff has sustained from the date of occurrence until the date of trial, such physical pain and mental anguish and loss of enjoyment of life as plaintiff may in reasonable probability sustain in the future beyond this date, such loss of earning power, physical impairment, and loss of vitality as plaintiff will in reasonable probability sustain in the future beyond this date. * * *

{¶ 62} "Further, you are instructed in considering the plaintiff's injuries and damages that you may also take into account physical impairment and loss of vitality as indicated herein." Id. at 827.

{¶ 63} In addition, the *Dugas* court stated, "The defendant must pay damages, but it is entitled to have a jury measure those damages according to clear, legally correct, plainly enunciated standards, an obligation which the trial court no doubt intended but did not accomplish." Id. at 828.

{¶ 64} In the instant matter, the following interrogatory was presented to the jury to determine compensatory damages:

{¶ 65} "You have now found that [plaintiff's name] has sustained an asbestos-related injury, and that it was caused by negligence under the Federal Employers' Liability Act.

{¶ 66} "By answering the following questions, you will determine the compensatory damages [plaintiff's name] sustained as a result of Norfolk Southern Railway's negligence. What sum of money do you award for the following: pain, suffering, mental anguish, *and* loss of the enjoyment of life suffered by [plaintiff] from the date of this injury until the date of his death. We award the amount of * * *." (Emphasis added.)

{¶ 67} Appellant's argument for reversible error turns on the use of the word "and" in the jury interrogatory. The jury instruction presented in *Dugas* is distinguishable from the jury instruction in the instant matter. The instruction given in *Dugas* includes pain, mental anguish, loss of enjoyment of life, and loss of vitality. The addition of "loss of vitality" along with the use of "loss of enjoyment of life" is where the appellate court found reversible error in the jury instruction. The *Dugas* jury interrogatory was found to be confusing and repetitive.

{¶ 68} The instant jury instruction, read as a whole, is not repetitive or confusing like the instruction used in *Dugas,* which appellant claims led to double recovery for the plaintiffs. The word "and" can mean "in addition or in connection with."[5] The interrogatory presented to the jury in the instant matter requested that the jury allot a sum for "loss of enjoyment of life," inclusive with "pain and suffering," but not as a separate amount. The interrogatory had only one line on which to write the damage award for the entire instruction. Absent a special interrogatory that would have designated the amount awarded for "pain and suffering" and "loss of enjoyment of life," the appellant is merely speculating that the jury might have awarded double damages to the plaintiffs. Although the trial court erred in connecting "pain and suffering" with "loss of enjoyment of

---

**5.** Merriam–Webster's Collegiate Dictionary (10th Ed.)

life" by using the word "and," the language the trial court used did not constitute reversible error.

{¶ 69} Furthermore, the appellant never objected to using the word "and" in the interrogatory as opposed to the word "including." The appellant only objected to the fact that loss of enjoyment of life cannot be measured as damages under FELA.

{¶ 70} In *Earl v. Bouchard Transp. Co.* (C.A.2, 1990), 917 F.2d 1320, an injured employee brought a personal injury action against his employer pursuant to the Jones Act, Section 688, Title 46 App., U.S.Code. The appellate court affirmed the trial court's award of damages, which the appellant claimed allowed additional recovery for the plaintiff. The main issue in the case was whether the trial court could instruct the jury to award damages for pain and suffering along with the loss of life's pleasures. The Jones Act allows the plaintiff, if he has sustained his burden of proof, to recover for pain, suffering, and mental anguish, including the effect of his injury on the normal pursuits and pleasures of life. The trial court mistakenly substituted the word "and" for the word "including." The *Earl* court held:

{¶ 71} "[D]efendants never actually objected to this aspect of the charge. They never brought to the court's attention the difference in language between the model instructions and the instruction that the court proposed to give and ultimately gave. Indeed, defendants did not ever refer to the model instructions at the charging conferences held by Judge Weinstein, much less call the judge's attention to the subtle difference between 'and' and 'including.' What the defendants characterize as an express objection to this instruction was nothing more than a general objection to any instruction on the topic of loss of enjoyment. And that objection was properly overruled by Judge Weinstein" Id. at 1325.

{¶ 72} The *Earl* court further stated:

{¶ 73} "[N]o matter how the issue is decided, and even if it is left undecided, the result should have no effect on awards by a properly instructed jury. A jury does not confront the question of whether loss of life's pleasures is part of, or is separate from, pain and suffering. A jury generally confronts only two questions with regard to damages: (1) What items of damages should be considered when calculating a verdict?; and (2) How should the various items which make up the total award be measured? * * * Thus whether we say the damages calculated by a jury for loss of life's pleasures are 'included' in the damages calculated for pain and suffering or whether we say the damages for loss of life's pleasures are 'separate from' the damages for pain and suffering, the total damages awarded by the jury should be the same. In either case, the jury is expected to make the same calculations and add the two amounts together to come up with the total award. District courts, therefore, should not be unduly preoccupied with the

unimportant distinction between 'and' and 'including'—that is, the issue of whether or not loss of life's pleasures are 'included' in pain and suffering." Id. at 1326–1327.

{¶ 74} In the instant matter, appellant brought a similar objection to the inclusion of loss of enjoyment of life, which objection was overruled by the trial court. Appellant never stated in the record that the use of the word "and" should be substituted or excluded. Therefore, given the case law and plain reading of the jury interrogatory, appellant's sixth assignment of error is without merit.

{¶ 75} "VII. The trial court erred when it allowed counsel for appellees to argue that the railroad did not call any witness employed thereby to testify on the issue of liability when the trial court granted a motion in limine in this regard and any alleged railroad employees were equally accessible to appellees as set forth in *United States v. Blakemore* (6th Cir.1973), 489 F.2d 193."

{¶ 76} The appellant claims that the trial court committed reversible error in allowing appellees' counsel to argue in its closing statement that the appellant had failed to produce a railroad representative to discuss the appellant's lack of knowledge concerning the hazards of asbestos-containing products pursuant to *United States v. Blakemore* (C.A.6, 1973), 489 F.2d 193.

{¶ 77} Counsel should be afforded great latitude in closing argument, and the determination of whether the bounds of permissible argument have been exceeded is, in the first instance, a discretionary function to be performed by the trial court. *Hampton v. St. Michael Hosp.*, Cuyahoga App. No. 81009, 2003-Ohio-1828, 2003 WL 1848772. Therefore, a trial court's determination will not be reversed absent an abuse of discretion. Id. However, where gross and abusive conduct occurs, a trial court is bound, sua sponte, to correct the prejudicial effect of counsel's misconduct. Id. It is permissible for attorneys to comment on and to make inferences from the nature and quality of an opponent's evidence. *Cusumano v. Pepsi–Cola Bottling Co.* (1967), 9 Ohio App.2d 105, 38 O.O.2d 132, 223 N.E.2d 477.

{¶ 78} While it would be error in a criminal proceeding to comment on the failure of a defendant to testify or produce evidence, reasonable inferences from the failure of witnesses to testify or to introduce evidence are legitimate subjects of argument in a civil action. *Smith v. Lautenslager* (1968), 15 Ohio App.2d 212, 44 O.O.2d 371, 240 N.E.2d 109. The court in *Lautenslager* held, in a civil action, the failure of a party to testify or put evidence before the court may be the subject of comment to the jury. Id. "While we are compelled to accede to the rule in *Griffin* [*v. Cal.* (1965), 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106], that comment by the prosecution upon a defendant's failure to testify violates his

rights under the Fifth Amendment to the federal Constitution, we do not agree it applies in a civil action. * *. * The historic right to comment to the jury upon the conduct of parties is fundamental in our system of adversary trial. Juries must decide facts and in so doing must weigh and determine the credibility of evidence and testimony." Id. at 214, 44 O.O.2d 371, 240 N.E.2d 109.

{¶ 79} In the instant matter, the appellant claims that it was unfairly prejudiced when appellees' counsel argued that the appellant had failed to call any railroad employee to address the knowledge that the railroad had concerning the harmful effects of asbestos. Appellant claims that the trial court granted a motion in limine, which decision prevented the appellant from introducing evidence that asbestos manufacturers advised the appellant that asbestos products were safe to use.

{¶ 80} The trial court ruled as follows on the motion in limine:

{¶ 81} "Having read what I've been given to read, and based upon the compelling arguments of both sides presented yesterday, I think fairness requires this, that the railroad is entitled to ask questions whether there were any warnings on the bags or whether—if they bring in a corporate representative, whether the railroad was ever directly warned by a manufacturer of an asbestos-containing product of the dangers of asbestos. Period. The manufacturers are not on trial, so we are not going to go into the state of the art as the manufacturers and suppliers of the product might have known it. But inasmuch as foreseeability is an issue in this case, those questions or questions like it will be allowed."

{¶ 82} According to the trial court's instruction, the appellant was allowed to put forth evidence concerning the warnings on asbestos products. However, the appellant never produced a witness with actual knowledge of the working conditions of the Spencer Railroad Yards to testify on its behalf, nor did the appellant produce physical evidence pertaining to the working conditions where the appellees were employed. Because the motion in limine did not preclude the appellant from producing evidence, the appellees are within bounds to comment during closing argument on appellant's lack of production of evidence.

{¶ 83} Because the trial judge has discretion over the closing comments of counsel and even more in civil cases, this court finds appellant's seventh assignment of error is without merit.

{¶ 84} "VIII. The trial court erred when it allowed appellees' expert witnesses to testify and did not allow appellant to cross-examine said experts as to their methodologies because their opinions did not satisfy the requirements as set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.* (1993), 509 U.S. 579 [113 S.Ct. 2786, 125 L.Ed.2d 469] and Ohio Rules of Evidence 611, 702 and 703."

{¶ 85} Appellant claims that the trial court erred when it allowed Dr. Dikman and Dr. Gordon to testify as expert witnesses. Appellant challenges the methods that Dr. Gordon used to compute his "background values" for asbestos exposure. "Background values" are the levels of asbestos fibers found in lung tissue of healthy persons with no history of occupational asbestos exposure. Appellant claims that for the burden level[6] of exposure in the appellees' lungs to be meaningful, the readings must be compared with proper "background values." Appellant also claims that the unreliable background values set forth by Dr. Gordon were relied upon by Dr. Dikman in forming his expert opinion. Appellant claims that the background values are unreliable because they never were published, peer reviewed, or tested by others.

{¶ 86} The determination as to whether a witness possesses the qualifications necessary for expert testimony and introducing evidence lies within the sound discretion of the trial court. In addition, the qualification of an expert witness will not be reversed unless there is a clear showing of an abuse of discretion on the part of the trial court. *State v. Maupin* (1975), 42 Ohio St.2d 473, 71 O.O.2d 485, 330 N.E.2d 708; *State v. Minor* (1988), 47 Ohio App.3d 22, 546 N.E.2d 1343.

{¶ 87} To constitute an abuse of discretion, the ruling must be more than legal error; it must be unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140. "The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations." *State v. Jenkins* (1984), 15 Ohio St.3d 164, 222, 15 OBR 311, 473 N.E.2d 264, quoting *Spalding v. Spalding* (1959), 355 Mich. 382, 384–385, 94 N.W.2d 810. In order to have an abuse of that choice, the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias. Id.

{¶ 88} In *Miller v. Bike Athletic Co.* (1998), 80 Ohio St.3d 607, 687 N.E.2d 735, the Ohio Supreme Court expressly adopted *Daubert v. Merrell Dow Pharmaceuticals, Inc.* (1993), 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469, which set forth a four-factor test to determine the reliability of scientific evidence: (1) whether the theory or technique has been tested; (2) whether it has been subjected to peer review; (3) whether there is a known or potential rate of error; and (4) whether the methodology has gained general acceptance. Although these factors may aid in determining liability, the inquiry is flexible.

---

6. The "burden level" is how much asbestos is actually found in the appellees' lung tissue.

{¶ 89} Ohio Rule of Evidence 702 provides:

{¶ 90} "A witness may testify as an expert if all of the following apply:

{¶ 91} "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;

{¶ 92} "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

{¶ 93} "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:

{¶ 94} "(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles.

{¶ 95} "(2) The design of the procedure, test, or experiment reliably implements the theory;

{¶ 96} "(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result."

{¶ 97} Appellant characterizes the testimony of Dr. Gordon as unreliable because his method of determining background values is untested and unpublished for peer review. In order to reverse the trial court's decision regarding the reliability of Dr. Gordon's testimony, there must be a clear abuse of discretion, and such abuse is not present in this case. Although appellant argues that Dr. Gordon's background values are unreliable, it offers no evidence to demonstrate what a reliable method to determine background values would be. Appellant had the opportunity to produce its own experts to counter the opinion of Dr. Gordon, either by opposing his methods, procedures, population sample, or by producing results of different background values to support the claim that Dr. Gordon's values were unreliable. Appellant produced no such evidence. The assertion that Dr. Gordon's findings are unreliable because they are not peer-tested, without a showing of reliable, peer-tested evidence to the contrary, is not enough to demonstrate an abuse of discretion and to merit reversal of the trial court's decision.

{¶ 98} Although Dr. Gordon's findings of background values were not peer-tested, no reversible error has occurred by introducing this evidence. The overwhelming weight of the evidence supports the conclusion that appellees had asbestosis, which resulted in lung cancer and death. Even Drs. Churg and

Rosenberg, experts retained by the appellant, agree with this conclusion. The center of this case focuses on whether negligent exposure to asbestos on the work-site resulted in the contraction of asbestosis. Regardless of Dr. Gordon's background level determinations, numerous experts and doctors on both sides support the conclusion that appellees did in fact suffer from this ailment, which was caused by exposure to asbestos at the workplace.

{¶ 99} The following are undisputed facts about the medical experts who testified in this case:

{¶ 100} Dr. Steven Dikman, a pathologist retained by appellees Poe, Wyatt, and Miller, testified that after reviewing the pathology materials, medical records, and death certificates, he was certain that each man had asbestosis and asbestos-related lung cancer and that their deaths were caused by the lung cancer.

{¶ 101} Dr. Andrew Churg, a pathologist retained by the appellant, testified that after reviewing the lung tissue of appellees Poe and Wyatt, a diagnosis of asbestosis and asbestos-related lung cancer could be maintained.

{¶ 102} Dr. Arthur Frank, a board-certified occupational disease specialist, reviewed the medical records and concluded within medical certainty that appellees Poe, Miller, and Hess suffered from asbestosis and lung cancer, and in the cases of Poe and Miller, their deaths were a result of asbestos-related lung cancer.

{¶ 103} Dr. David Rosenberg, a pulmonologist retained by the appellant, personally examined appellee Miller as well as his radiological films and determined that Miller had asbestosis and asbestos-related lung cancer.

{¶ 104} Dr. Stephen Proctor, Dr. Neil Patel, and Dr. Fred Dula, treating physicians for appellees Hess and Miller, testified that Hess and Miller each suffered from asbestosis and asbestos-related lung cancer.

{¶ 105} Appellant has also alleged that Dr. Gordon's testimony should have been excluded because it is based on information that was neither admitted in evidence nor personally perceived. Appellant suggests that it was not provided with the background value data from Dr. Gordon and the Mt. Sinai Laboratory. However, Dr. Gordon directly stated in deposition that he had provided appellant's counsel with a copy of his most current background value data.

{¶ 106} Finally, appellant argues that it was denied the opportunity to fully cross-examine Dr. Gordon concerning the background values. This claim is without merit because appellant itself moved to strike the portion of Dr. Gordon's deposition testimony explaining the significance of the background values, and that motion was granted. Appellant objected to the testimony regarding the

background values and cannot now claim that it was unfairly restricted from cross-examining on this issue.

{¶ 107} Appellant claims that the testimony of Dr. Dikman should have been excluded because it was based on Dr. Gordon's "unreliable background values." In allowing the testimony of Dr. Dikman, the trial court determined that he was a qualified expert witness and that his procedures and techniques were reliable. Absent a clear abuse of discretion, this decision of the trial court as to the qualifications of the witness will not be reversed. Appellant's objection to the expert testimony of Dr. Dikman is based on the claim that Dr. Dikman relied on Dr. Gordon's background values, which are alleged to be unreliable, as a basis of forming his opinion. This claim contradicts the testimony offered by Dr. Dikman at trial. When directly questioned on the issue, Dr. Dikman twice responded that his determinations were made irrespective of the background values of Dr. Gordon. Dr. Dikman's opinion as to the significance of the exposure levels in the appellees was not influenced by Dr. Gordon's work concerning background values. Id. Therefore, the reliability of Dr. Gordon's background values has no bearing on the reliability of Dr. Dikman's testimony, and the trial court did not abuse its discretion in allowing his testimony.

{¶ 108} The main issue of this case was whether the appellant negligently exposed the appellees to asbestos, which caused them to contract the occupational disease asbestosis. Even if the introduction of Dr. Gordon's testimony was error due to alleged unreliable background values, it constituted harmless error. Seven medical doctors and experts supplemented Dr. Gordon's testimony showing that these men did, in fact, have asbestos-related lung cancer. In reviewing the record, there exists substantial evidence indicating that these appellees had asbestosis and died from the lung cancer it caused. For the foregoing reasons, appellant's eighth assignment of error is without merit.

Judgment affirmed.

COLLEEN CONWAY COONEY and DIANE KARPINSKI, JJ., concur.