Ira L. MARTIN, Plaintiff-Appellee,

v.

WALK, HAYDEL & ASSOCIATES, INC., and J. Ray McDermott & Co., Inc., Defendants-Appellants.

No. 83–3350.

United States Court of Appeals, Fifth Circuit.

Sept. 24, 1984.

Montgomery, Barnett, Brown & Read, Wood Brown, III, New Orleans, La., for Walk, Haydel & Associates.

Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Edward J. Koehl, Jr., New Orleans, La., for J. Ray McDermott.

Cave & McKay, Donald G. Cave, Baton Rouge, La., for plaintiff-appellee.

Before CLARK, Chief Judge, JOLLY and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

The plaintiff received a judgment for damages under the Jones Act,[1] and the general maritime law for injuries he received in a fall while attempting to transfer from one vessel to another in navigable waters. Defendant Walk, Haydel & Associates, Inc., (WHA), objects to the finding of negligence on its part and to the conclusion that it violated its obligation to provide a seaworthy vessel. Defendant J. Ray McDermott & Co., Inc., (McDermott), complains of the finding of negligence on its part under the general maritime law. We affirm the portion of the judgment against WHA grounded upon negligence. We reverse the portion of the judgment against WHA predicated on unseaworthiness. We also reverse the judgment against McDermott.

I.

Louisiana Offshore Oil Port, Inc., (LOOP), contracted with plaintiff's employer, WHA, to act as inspectors of dredging work being done for LOOP by McDermott in inland waters near Galliano, Louisiana. To reach the dredging site, plaintiff and other WHA inspectors were required to travel approximately three miles by boat from LOOP's marina. LOOP provided the WHA inspectors with small aluminum flatboats for these trips.

LOOP maintained a number of these aluminum flatboats at its facility near Galliano. Three of these vessels were provided to WHA for its inspectors to use. The same three flatboats were ordinarily used by the WHA inspectors. Occasionally, however, a LOOP dispatcher would permit someone other than WHA employees to use one of the three vessels assigned to WHA. Also, WHA inspectors occasionally used one of the LOOP flatboats not specifically assigned to WHA.

When a WHA inspector reported to the LOOP facility, a LOOP dispatcher routinely issued a boat to the inspector. When the inspector completed his shift, he returned the boat to the LOOP dispatcher.

LOOP provided fuel for the vessels; LOOP also maintained the vessels and provided any supplies needed for their use.

Except when the WHA inspector was using the vessel during his work shift, the vessels remained under the control of the LOOP dispatcher. WHA was not authorized to use the vessels for any purpose other than travelling to and from the worksite.

On the day of the accident, plaintiff reported to the dispatcher at the LOOP facility and checked out one of the aluminum flatboats. He proceeded to the dredge site and upon arrival tied the bow of his aluminum flatboat to the stern of the dredge. The vessels were situated in a calm, sheltered, dredged channel. Wind and wave action were negligible.

Truck tires were secured across the stern of the barge for use primarily as bumpers. A metal railing was located about twelve inches forward of the aft end of the vessel and extended above the stern deck approximately thirty inches. The deck of the barge was approximately four feet above the water; the deck of the flatboat was about one and a half feet above the water.

---

1. 46 U.S.C.A. § 688.

Upon reaching the dredge site, plaintiff boarded the McDermott barge in the customary fashion. He stepped from the bow of the flatboat to the inside of one of the truck tire bumpers. He grabbed the rail for support and then stepped with one foot to the deck of the barge. He was then able to place his other foot on the deck of the barge, cross the railing and the boarding maneuver was complete.

Sometime during his work shift, plaintiff found it necessary to return to the flatboat to retrieve his briefcase which he had neglected to bring aboard the barge. In transferring from the barge to the flatboat, plaintiff reversed the order of the procedure he followed in transferring from the flatboat to the barge. Plaintiff stepped from the deck of the barge to the inside of one of the truck tires. Once his entire weight was being supported by the tire and he was holding the rail for additional support, he was ready to step backwards onto the bow of his aluminum boat. He successfully placed one foot on the bow of the flatboat. However, about the time his second foot came in contact with the deck of the aluminum boat, he slipped and fell.

Plaintiff contends that his fall resulted from several factors: 1) inadequate lighting on the barge which made it difficult for him to see the deck of the flatboat as he attempted to board her; 2) the presence of a slippery substance on the deck of the barge which adhered to his shoes and contributed to his poor footing; 3) the lack of a ladder or other safe means to transfer from the barge to the flatboat; and 4) the slippery condition of the foredeck of the flatboat resulting from the absence of non-skid paint.

Prior to trial, plaintiff compromised his claim against LOOP and proceeded against WHA under the Jones Act and general maritime law and against McDermott under general maritime law. Following a bench trial, the district court held WHA liable for plaintiff's injuries on the grounds that: 1) WHA failed to fulfill its Jones Act duty to provide plaintiff a safe place to work; and 2) WHA, as demise charterer of the flatboat, failed to provide plaintiff a seaworthy vessel as required under the general maritime law. The court found that McDermott was negligent because it failed to provide plaintiff a reasonably safe means of egress from the barge. The court found that lighting on the barge was adequate and that plaintiff failed to establish that a slippery substance on the deck of the barge contributed to his fall. A ten percent reduction in damages was made for plaintiff's contributory negligence. Liability for the remaining damages was apportioned sixty-five percent to WHA and thirty-five percent to McDermott.

## II.

WHA asserts that the district court erred in finding that it was the demise charterer of the flatboat. As a mere user of the flatboats, WHA asserts that it did not warrant the seaworthiness of the flatboat to the plaintiff.

> The test [of a demise charter] is one of "control"; if the owner retains control over the vessel, merely carrying the goods furnished or designated by the charter, the charter is not a demise; if the control of the vessel itself is surrendered to the charterer, so that the master is his man and the ship's people are his people, then we have to do with a demise. As the Supreme Court has said, "To create a demise the owner of a vessel must completely and exclusively relinquish 'possession, command and navigation' thereof to the demisee." [*Guzman v. Pichirilo*, 369 U.S. 698, 699–700, 82 S.Ct. 1095, 1096, 8 L.Ed.2d 205, 207 (1962).]

B. Gilmore and C. Black, The Law of Admiralty 240 (2d ed. 1975). See also *Reed v. Steamship Yaka*, 373 U.S. 410, 412, 83 S.Ct. 1349, 1351–52, 10 L.Ed.2d 448, 451 (1963); *Deal v. A.P. Bell Fish Co.*, 674 F.2d 438, 440 (5th Cir.1982).

The burden placed on the party seeking to establish a demise charter "is heavy, for courts are reluctant to find a demise when the dealings between the parties are consistent with any lesser relation-

ship." *Guzman,* 369 U.S. at 699, 82 S.Ct. at 1096; *Deal,* 674 F.2d at 441.

■ The record simply does not demonstrate that WHA acquired exclusive possession and control of the flatboats. WHA employees were required to check the boats in and out of the LOOP marina on a daily basis. Although certain boats were "assigned" to WHA, LOOP allowed others to use the WHA boats and also provided "unassigned" boats to WHA. WHA had no authority to take the boats anywhere other than to the dredge on which they were working. True command of the boats remained with LOOP. LOOP saw to the maintenance, repair and fueling of the boats. While WHA's employees piloted and navigated the boats to and from the dredge, this use is insufficient to create a demise charter. *Stevens v. Seacoast Co., Inc.,* 414 F.2d 1032, 1035 (5th Cir.1969). We conclude, therefore, that the district court's finding that WHA was the demise charterer of the flatboat is clearly erroneous. Since WHA did not warrant the seaworthiness of this boat, the trial court's imposition of liability premised on unseaworthiness cannot stand.

LOOP, the owner of the flatboat, owed the plaintiff the warranty of seaworthiness on that vessel. In view of LOOP's compromise with plaintiff, the district court should, on remand, determine to what extent the unseaworthy condition of the vessel contributed to plaintiff's injuries and reduce plaintiff's recovery to that extent. *Leger v. Drilling Well Control, Inc.,* 592 F.2d 1246 (5th Cir.1979).

### III.

■ WHA contends that the district court's finding of negligence against WHA under the Jones Act is clearly erroneous. WHA owed plaintiff the duty of exercising reasonable care to provide him a safe place of work. *Callahan v. Fluor Ocean Services, Inc.,* 482 F.2d 1350 (5th Cir.1973); *Barrios v. Louisiana Construction Materials Co.,* 465 F.2d 1157 (5th Cir.1972). The fact that WHA did not own the flatboats did not relieve it of this obligation.

Id. Plaintiff presented evidence indicating that WHA had knowledge of the worn, unpainted deck of the flatboat prior to plaintiff's accident and failed to remedy the defects. The trial court's conclusion that WHA was negligent is not clearly erroneous.

### IV.

■ McDermott objects to the finding of negligence on its part made by the district court. McDermott owed plaintiff "the duty of exercising reasonable care under the circumstances." *Kermarec v. Compagnie Generale Transatlantique,* 358 U.S. 625, 632, 79 S.Ct. 406, 410, 3 L.Ed.2d 550, 555 (1959). This duty encompassed the provision of a reasonably safe means of egress from the barge. A ladder permanently affixed to the side of the barge probably would have been safer to climb on than the truck tire provided plaintiff by McDermott. The evidence therefore fully supports the finding of the trial court that McDermott was negligent in failing to furnish a reasonably safe means of egress from the barge. However, a careful review of the record reveals no proof that supports a finding that the absence of a ladder contributed to plaintiff's fall on the flatboat. Plaintiff did not testify that he was unable to hold onto the tire, or that the tire moved or in any other way contributed to his fall. The record will not support the district court's conclusion that a causal link existed between the defendant's negligent act and plaintiff's damage. Consequently, the imposition of liability against McDermott cannot stand.

### V.

In summary, we reverse the trial court's imposition of liability against McDermott and that portion of the judgment against WHA predicated on unseaworthiness. We affirm the trial court's imposition of liability against WHA predicated on negligence. In order for the district court to consider the extent to which the unseaworthy flatboat contributed to plaintiff's injury and to reduce the award accordingly, and to per-

mit a reassessment of the extent of plaintiff's fault and that of WHA in light of our opinion, we vacate the judgment and remand the case for further proceedings consistent with this opinion.

AFFIRMED in part, REVERSED in part and REMANDED.