# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 02-2379

DOUGLAS SCHADEL and INEZ SCHADEL,

*Plaintiffs-Appellees*,

v.

IOWA INTERSTATE RAILROAD, LTD.,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 C 8435—**Nan R. Nolan**, *Magistrate Judge.*

ARGUED SEPTEMBER 24, 2003—DECIDED AUGUST 25, 2004

Before BAUER, EASTERBROOK, and DIANE P. WOOD, *Circuit Judges.*

DIANE P. WOOD, *Circuit Judge.* Complex questions relating to such issues as claim reduction, the availability of contribution and indemnity in a case governed by the Federal Employers' Liability Act (FELA), and the rules of joint and several liability confront us in this case. Specifically, we must decide whether a non-settling railroad should be held liable for all damages suffered by its employee, reduced by an amount attributable to the employee's comparative negligence and a settlement with a third party, or alterna-

tively, if the railroad should be responsible only for its proportionate share of damages, taking into account the comparative fault of the employee and that of a settling third-party defendant. The district court allowed the jury to find the total damages suffered by the plaintiff, without regard to the settlement; it then reduced those damages by 50%, the amount representing the plaintiff's negligence; and finally, using an Illinois standard, it applied a set-off against the balance owed by the railroad. While our reasons are not identical to those offered by the district court, we conclude that the result was correct, and we therefore affirm the judgment.

# I

Douglas Schadel was employed as a conductor by the Iowa Interstate Railroad (IAIS). He was working on the morning of December 31, 1997, as part of a two-person crew assigned to relieve an eastbound IAIS crew who were expected to come through the Joliet, Illinois, area that morning. In keeping with normal IAIS practice, rather than accomplish the crew exchange at a railroad yard, Schadel's crew was to meet the train at an at-grade railroad crossing west of Joliet. The one they chose was at Bush Road.

Engineer Eddie Brown was the other crew member. With Brown at the wheel and Schadel in the passenger seat, the two drove in an IAIS vehicle to the Bush Road crossing just before 9:00 a.m. that morning. Brown parked the vehicle approximately 50 feet south of the crossing gates, on the west shoulder of the road. Brown immediately got out of the car as the train came to a stop. Schadel initially went with him, but then Schadel returned to the car to retrieve some paperwork. By this time, the crossing gates, which were equipped with bells and flashing lights, had caused the approaching traffic to come to a halt. Suddenly, however, a vehicle driven by Brenda Kowalewicz flew toward the gates

from the north, skidded past the stopped vehicles, crashed through the wooden gates, and shot on to strike Schadel, who was then standing behind the car. The impact of the collision propelled Schadel into a nearby ditch. He was taken to a local emergency room, and later he underwent surgery and rehabilitative work on his knees. The accident left him unable to work as a conductor.

Schadel sued IAIS under the FELA and he sued Kowalewicz under Illinois state law. For the latter claim only, his wife joined him and claimed loss of consortium. IAIS filed cross-claims against Kowalewicz for contribution and indemnification. Prior to the trial, Schadel settled with Kowalewicz and her insurance carrier for the full amount covered by her policy, $100,000, in return for dismissing his claims against her. Invoking the Illinois Joint Tortfeasor Contribution Act ("Contribution Act"), 740 ILCS 100/0.01 *et seq.*, Schadel and Kowalewicz asked the district court to approve this settlement. As required by the Contribution Act, the court convened a "good faith" hearing to assess the validity and reasonableness of the settlement. (This case was proceeding before the magistrate judge by consent of the parties. See 28 U.S.C. § 636(c).) IAIS objected to the use of the Illinois procedure at that juncture, arguing that issues concerning the settlement should be governed by federal common law, not by the Illinois statute. The district court disagreed, approved the settlement, and, in accordance with the Contribution Act, dismissed Kowalewicz from the case with prejudice. That order of dismissal also extinguished IAIS's claims against her for contribution and indemnity.

At the jury trial on Schadel's FELA claims against IAIS, the district court precluded IAIS from introducing any evidence or argument about the Kowalewicz settlement. The jury did hear expert testimony, however, about Kowalewicz's driving at the time of the accident. In its instructions and special verdict form, the court allowed the jury to assign fault only to Schadel or IAIS; it was not permitted to consider

Kowalewicz's role. The jury found Schadel's overall damages to be $450,000. It found that he was 50% contributorily negligent, which reduced his recoverable damages to $225,000. The court then reduced that number to $125,000, to account for the settlement, and then added another $5,000 by agreement of the parties to account for Mrs. Schadel's loss of consortium claim, for a final total of $130,000 due from IAIS.

IAIS filed post-trial motions requesting a new trial on the ground that the district court applied the wrong methodologies to the allocation of damages. Instead of using a *pro tanto* approach (that is, accounting for the settlement with a dollar-for-dollar reduction in the damages IAIS owed), IAIS argued that the court should have used a proportionate share approach. Under the latter rule, the jury would have allocated responsibility among all three parties and imposed damages on IAIS only to the extent of its share of the liability. The district court denied the motions and entered the $130,000 judgment against IAIS.

## II

The district court had federal question jurisdiction over Schadel's claim against IAIS, because it arose under the FELA, see 28 U.S.C. § 1331, 45 U.S.C. §§ 51-60; it had supplemental jurisdiction over Schadel's claim against Kowalewicz and IAIS's contribution and indemnification claims against her, see 28 U.S.C. § 1367(a). The more difficult question is what law governs the allocation of responsibilities among these parties: federal law (including federal common law), or state law (Illinois law in this case). Moreover, even if federal common law governs, the further question is whether courts are to develop that law independently, or if this is one of those areas in which federal common law borrows the state law rule. See *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 718 (1979). If state law applies

directly, or if federal common law adopts state law here, then we would come full circle back to the question whether the district court correctly applied the Illinois rule.

The reason this case is in federal court at all is because it is one brought by a railroad employee against the railroad, and thus it falls within the scope of the FELA. We begin, therefore, with an examination of that statute. The FELA makes railroad common carriers "liable in damages to any person suffering injury while he is employed by such carrier . . . for such injury or death resulting in whole or in part from the negligence" of the railroad or its employees. 45 U.S.C. § 51. In *Norfolk & Western Ry. Co. v. Ayers*, 538 U.S. 135 (2003), the Supreme Court noted the long-standing rule that "joint and several liability is the traditional [FELA] rule." *Id.* at 163. Relying on the language in the statute making the railroad employer liable if the injury results "in whole or in part" from its negligence, the Court held that a jury is not permitted to make a deduction from a damages award for the contribution of other defendants to the employee's injuries:

> Nothing in the statutory text [of the FELA] instructs that the amount of damages payable by a liable employer bears reduction when the negligence of a third party also contributed in part to the injury-in-suit.

*Id.* at 160. This is so notwithstanding the fact, recognized by the Court in *Ayers*, that the FELA specifies a rule of comparative negligence. That rule is found in § 53, which says that "the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee." 45 U.S.C. § 53.

Put in its simplest terms, we must decide between two alternatives. Under the one used by the district court, the sequence of decisions is as follows: (1) ascertain the full

amount of damages suffered by the plaintiff; (2) ascertain the plaintiff's comparative fault with respect to the non-settling defendant(s); (3) compute net damages due to the plaintiff after reducing the total for that fault; (4) apply a *pro tanto* reduction to the net sum, representing the amount paid by the settling defendant(s); and (5) assess the balance against the non-settling railroad. Applying that rule, we have $450,000 in total damages, less 50% comparative fault, for a net recoverable amount of $225,000, less $100,000 from the Kowalewicz settlement, giving a final amount due of $125,000 (plus the uncontested $5,000, which is unimportant to the issue before us and which we disregard from now on).

The approach IAIS urges requires the following steps: (1) ascertain the full amount of damages suffered by the plaintiff; (2) ascertain the comparative fault of all parties involved, both settling and non-settling; (3) compute net damages due from the non-settling defendant by taking that percentage from the total; and (4) assess that amount against the non-settling defendant. (Whether the non-settling defendant has a right of contribution against the settling defendants, if the settling defendants have paid "too little" under this approach is a question we need not reach here, although we note that the Supreme Court was critical of such a rule in *McDermott, Inc. v. AmClyde and River Don Castings, Ltd.*, 511 U.S. 202, 221 (1994).) IAIS clearly thinks that this rule would be highly favorable to it here. Suppose, for example, that the jury would have found that Kowalewicz's reckless driving was responsible for 80% of the damages, that IAIS was responsible for 10%, and that Schadel was 10% negligent. Applying those proportions to the overall figure of $450,000, that would mean that Kowalewicz should have paid $360,000; that IAIS would pay $45,000, and that Schadel would have absorbed $45,000 of the loss before taking the settlement into account. In fact, Schadel would wind up substantially under-compensated under this regime,

because he would also be left with $260,000 of Kowalewicz's liability. This strikes us as, at best, in serious tension with the rule of joint and several liability that applies to FELA cases.

Before choosing the proper rule, we must first decide what law governs: Illinois law, as the district court thought, or federal common law. The Supreme Court has long emphasized the importance of giving the FELA a "uniform application throughout the country," which the Court sees as "essential to effectuate its purposes." *Dice v. Akron, Canton & Youngstown R.R. Co.*, 342 U.S. 359, 361 (1952). In fulfilling this mandate, the Court has said that federal law must set the terms of a railroad employee's right to recover against her employer for negligence, and accordingly "[s]tate laws are not controlling in determining what the incidents of this federal right shall be." *Id.* Since the time of the FELA's enactment in 1908, the Court has "develop[ed] a federal common law of negligence under the FELA, informed by reference to the evolving common law." *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 558 (1994) (Souter, J., concurring). See also *Dice*, 342 U.S. at 361 ("[V]alidity of releases under the [FELA] raises a federal question."); *N.Y. Cent. R.R. Co. v. Winfield*, 244 U.S. 147, 153 (1917) (states may not require carriers to compensate their employees for injuries in the absence of negligence because of conflict with the FELA).

In establishing the scope of recovery under the FELA, the Court has defined not only the nature and cause of the injuries that may be redressed under the statute, but also the type and extent of damages available. See *Monessen S.W. Ry. Co. v. Morgan*, 486 U.S. 330, 335 (1988). *Ayers*, as we have already noted, addressed a question very close to the one before us, insofar as it dealt with the way that liability could be apportioned under the statute. The fact that the Court rejected a rule under which the railroad's liability would be reduced by the negligence of third-party tortfeasors is of no small interest to us here, since that is exactly

what IAIS wants—a reduction in its liability directly tied to Kowalewicz's negligence. The Court was clear that this did not preclude railroads from seeking contribution or indemnity from those other tortfeasors, "under otherwise applicable state or federal law," 538 U.S. at 162, but the railroad's own responsibility was affected only by the plaintiff's comparative negligence.

If this case were solely about Schadel's right to recover the full amount of damages against the railroad, regardless of the responsibility of any other tortfeasor (settling or otherwise), then *Ayers* indicates that federal common law governs, and that the railroad is jointly and severally liable for the full amount. If instead we characterize the case as one that is really about IAIS's ability to obtain contribution or indemnity from a joint tortfeasor, then the cases cited in *Ayers* indicate that state law governs. See, *e.g.*, *Shields v. Consol. Rail Corp.*, 810 F.2d 397, 399 (3d Cir. 1987) ("Our analysis of the merits begins by recognizing that third-party actions for contribution arising out of FELA claims are governed by state law."); *Ala. Great S. R.R. Co. v. Chi. & N.W. Ry. Co.*, 493 F.2d 979, 983 (8th Cir. 1974); *Bean v. Mo. Pac. R.R. Co.,* 525 N.E.2d 1231, 1234 (Ill. App. Ct. 1988). While the question is close, in our view the former characterization comes closer to the mark. At stake is the question of what effect, if any, Schadel's decision to settle with Kowalewicz will have on his ultimate FELA recovery. The rationale of *Ayers* leads us to conclude that a federal rule should apply here, just as it did there.

Next, we must decide what the content of that federal rule is. It is well-established that federal common law may either create a single rule of law that is applicable to all cases in a particular area, or it may adopt as federal law the rule of the state in which the case arises. See Richard H. Fallon, Jr., Daniel J. Meltzer & David L. Shapiro, *The Federal Courts and the Federal System* 701 (5th ed. 2003) (noting that "the Court's current approach to federal com-

mon lawmaking" reflects "a preference for incorporation of state law absent a demonstrated need for a federal rule of decision"). *Kimbell Foods* offered only general guidance on this choice. There, the Court said that "[w]hether to adopt state law or to fashion a nationwide federal rule is a matter of judicial policy dependent upon a variety of considerations always relevant to the nature of the specific governmental interests and to the effects upon them of applying state law." 440 U.S. at 728 (internal quotation marks omitted).

In the case of the FELA, the emphasis has always been on uniformity of result. State laws vary considerably in the way they treat issues such as claim reduction, contribution, indemnity, comparative fault, and the like. A single railroad typically operates in more than one state. If we were to choose the incorporation of state law for this issue, results would vary depending on where the particular employee happened to be injured. In our view, this is therefore an instance of a case in which "application of state law would frustrate specific objectives of the federal program[ ]." *Kimbell Foods,* 440 U.S. at 728. See also *Winfield,* 244 U.S. at 149 ("[T]here are weighty considerations why the controlling law should be uniform and not change at every state line."). Only a uniform federal rule would be consistent with nearly a century's worth of FELA decisions from the Supreme Court.

What, then, is the correct rule? This court has identified four possible approaches to allocating damages in an action involving multiple tortfeasors, some of whom settle with the plaintiff prior to trial: no contribution, contribution, contribution plus settlement bar, and claim reduction. *In re Oil Spill by Amoco Cadiz,* 954 F.2d 1279, 1315 (7th Cir. 1992). Briefly, the "no contribution" rule holds defendants jointly and severally liable for full damages without the option of contribution; the "contribution" rule holds the defendants jointly and severally liable for full damages with the option of contribution from both settling and non-set-

tling defendants; the "contribution plus settlement bar" rule is the same as the contribution rule, except that settling defendants are exempt from contribution; and finally the "claim reduction" rule holds defendants jointly and severally liable, unless one or more settles, in which case the "plaintiff forgoes the ability to collect from the remaining defendants any damages attributable to the settling party's share of fault . . . [and] the remaining defendants are not entitled to contribution from the settling party—because after claim reduction there is no 'excess' payment for which contribution would be appropriate." *Id.* In *Amoco Cadiz*, we observed that "none of the four approaches is without its problems, and that claim reduction in particular is no panacea [because it] creates a substantial possibility of extended collateral litigation." *Id.* at 1318. See also *Akzo Nobel Coatings, Inc. v. Aigner Corp.,* 197 F.3d 302, 308 (7th Cir. 1999) ("[T]he choice between the *pro tanto* approach and claim reduction is a tossup."). In the face of such a tossup, we concluded in *Akzo* that "it is best to match the handling of settlements with the way intersecting principles of law work." *Id.*

IAIS urges us to look to the Supreme Court's decision in *McDermott, supra,* for the relevant legal principles. In *McDermott*, the Court adopted a proportionate share approach and held that the liability of non-settling defendants in an admiralty case should be calculated with reference to the jury's allocation of proportionate responsibility of all parties, rather than by giving non-settling defendants credit for the dollar amount of the settlement (the *pro tanto* approach). But there is an important, and we think dispositive, difference between *McDermott* and this FELA case. Under the admiralty rule adopted by the Court in *McDermott,* each defendant is responsible for only its proportionate share of the liability (when such an allocation can reasonably be made). 511 U.S. at 208. The Court distinguished the result in *Edmonds v. Compagnie Generale Transatlantique,* 443 U.S.

256 (1979), in which it had refused to reduce the judgment against a shipowner by the proportionate fault attributed to a stevedore whose liability was limited by the Longshore-men's and Harbor Worker's Compensation Act (LHWCA). Instead, the plaintiff was permitted to collect from the shipowner the entirety of his damages, after adjusting for the plaintiff's own negligence. *Edmonds,* the Court stated "merely reaffirm[ed] the well-established principle of joint and several liability." 511 U.S. at 220.

These final comments about *Edmonds,* coupled with the approach in *Ayers,* persuade us that the *pro tanto* approach effectively used by the district court is the correct one for a FELA case. The principle of joint and several liability is common to the LHWCA and the FELA. In other areas of federal law, the Court has refused to fashion a federal common-law right of contribution where liability was joint and several. See *Texas Industries, Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 646 (1981) (no federal common-law right to contribution in antitrust cases); *Northwest Airlines, Inc. v. Transport Workers,* 451 U.S. 77, 88-91, 97 (1981) (rejecting federal common-law right of contribution in Equal Pay Act case, and distinguishing admiralty precedents). As an initial matter, under the FELA, IAIS was responsible for the full amount of Schadel's injuries, reduced only by the part attributable to Schadel's own negligence. Schadel did not even have to include Kowalewicz as a named defendant, as long as he was able to prove that the railroad was negligent in whole or in part, and his injuries were caused by that negligence. The purpose of the FELA, to reiterate, is to facilitate the injured railroad employee's recovery. We therefore conclude that, as a matter of federal law, Schadel was entitled to the full $130,000 from IAIS.

Before concluding, we note that IAIS did not include in its appeal any complaint about the district court's decision to dismiss its claims for contribution and indemnity against Kowalewicz. We therefore have no occasion to decide whether

the FELA requires this type of immunity for a settling defendant, or if a settling defendant must take into account the possibility of a claim for contribution or indemnity. The Supreme Court's discussion in *Ayers* notes that a bar on such actions would tend to encourage settlement. It also observes that a fairness hearing like the one held here ought to catch settlements that are grossly disproportionate to the settling defendant's likely liability, but that there are limits to these hearings as well. On the other hand, permitting contribution or indemnity would have the effect of ultimately allocating responsibility accurately. The question is far too complex for us to address in the abstract, even if we appropriately could do so. We therefore leave it for another day.

## III

The judgment of the district court is AFFIRMED.

A true Copy:

      Teste:

                   _____
                   *Clerk of the United States Court of*
                   *Appeals for the Seventh Circuit*