HESS ET AL., APPELLEES, *v.* NORFOLK SOUTHERN
RAILWAY COMPANY, APPELLANT.

[Cite as *Hess v. Norfolk S. Ry. Co.,*
106 Ohio St.3d 389, 2005-Ohio-5408.]

(No. 2003–2035—Submitted January 11, 2005—Decided October 26, 2005.)

ALICE ROBIE RESNICK, J.

{¶ 1} Twenty-eight former employees of defendant-appellant, Norfolk Southern Railway Company, filed a master complaint in the Cuyahoga County Court of Common Pleas pursuant to the Federal Employers' Liability Act ("FELA"), Sections 51–60, Title 45, U.S.Code, alleging that Norfolk had negligently exposed them to asbestos at its Spencer, North Carolina, facility, which caused them to contract various forms of pneumoconiosis. Four of the cases, i.e., those brought by plaintiffs-appellees Lee McAdoo Hess, Lester L. Poe Sr., Charlie Leon Miller, and Baxter Lovelace Wyatt, all of whom have since died of lung cancer, were consolidated for trial under Civ.R. 42(A).

{¶ 2} Before trial, Norfolk proposed instructions that would require the jury to apportion damages according to degree of fault, weighing the railroad's negligence in exposing appellees to asbestos not only against appellees' own negligence, but also against the negligence of non-FELA defendants who contributed to appellees' injuries. Specifically, Norfolk requested an instruction that the jury must "determine the percentage to which [each] plaintiff's non-work related factors, if any, contributed to his injuries" and that the court would decrease the amount of any award by that percentage. Norfolk relied on *McDermott, Inc. v. AmClyde* (1994), 511 U.S. 202, 114 S.Ct. 1461, 128 L.Ed.2d 148, an admiralty case, for the proposition that an "FELA employer whose employee has been injured partially by [the] employer's negligence and partially by other causes must pay only for those injuries attributable to its negligence," or in other words "is required to pay only its proportionate share of damages."

{¶ 3} During trial, the court precluded Norfolk from arguing that third parties not before the court, including other employers and asbestos manufacturers, may have caused or contributed to appellees' injuries. The trial court allowed the jury to apportion responsibility only between Norfolk and appellees based on comparative fault. On October 15, 2001, the jury returned verdicts in favor of each appellee, ranging from $510,000 to $1.07 million, but found each appellee partially responsible for his lung cancer.[1]

{¶ 4} Norfolk filed two interrelated posttrial motions. In one, Norfolk requested a new trial pursuant to Civ.R. 59(A), arguing that the trial court erroneously excluded evidence that each of the plaintiffs had separately sued the asbestos manufacturers and that these entities were responsible, at least in part, for plaintiffs' alleged injuries.

{¶ 5} In the other motion, Norfolk argued, in essence, that since the trial court did not allow for apportionment of damages among potential tortfeasors, the railroad is now "entitled to a set-off of any damages which the Plaintiffs may recover in their claims against the manufacturers." To this end, Norfolk requested a stay of any entry of judgment until the claims against the manufacturers have been resolved. Otherwise, Norfolk argued, the plaintiffs will obtain a double recovery.

{¶ 6} Norfolk later discovered that appellees had already settled with some of the asbestos manufacturers before trial. The parties agree that Hess received settlement proceeds totaling $12,682, that Poe received $4,900, Miller $3,450, and Wyatt $9,000.[2]

{¶ 7} Based on this discovery, Norfolk modified its motions for new trial and setoff. Norfolk now cited McDermott, supra, for the proposition that "a nonsettling defendant is not liable for damages caused by third parties or joint tortfeasors with whom a plaintiff has already reached a settlement." Norfolk argued that in FELA cases involving pretrial settlements with joint tortfeasors, the nonsettling defendant is liable only for its proportionate share of the damages and the plaintiff's award must be reduced by the percentage of fault attributable to the settling defendants. Thus, Norfolk sought a new trial to allow the jury to

---

1. The jury awarded $1.07 million to Hess, $510,000 to Miller, $570,000 to Poe, and $905,000 to Wyatt. The jury found Hess and Wyatt 25 percent responsible and Miller and Poe 50 percent responsible for their lung cancer.

2. Since the various settlements involved trust payment plans established in conjunction with class-action asbestos litigation and related bankruptcy proceedings, the actual amount of settlement funds available for and received by appellees under these plans bore little resemblance to the scheduled payments or "liquidated value" of the settlements. None of the parties contend that some amount other than the actual settlement payments made under these agreements is relevant to the issues raised in this case.

apportion damages among the settling and nonsettling defendants, or, in the alternative, a full setoff of the settlement amounts received by the plaintiffs.

{¶ 8} The trial court denied both motions and, after adjusting the verdicts for appellees' comparative negligence and other factors not relevant here, entered final judgments totaling approximately $1.86 million.[3]

{¶ 9} Norfolk appealed to the Eighth Appellate District, asserting eight assignments of error, including that "[t]he trial court erred in failing to allow apportionment of liability of damages under FELA and by not allowing set-offs." Soon after, however, the United States Supreme Court decided *Norfolk & W. Ry. Co. v. Ayers* (2003), 538 U.S. 135, 123 S.Ct. 1210, 155 L.Ed.2d 261. In that case, the Supreme Court rejected Norfolk's argument that the FELA authorizes an apportionment of damages between railroad and nonrailroad causes and held that the FELA permits an employee to recover his or her full damages from the railroad, regardless of whether the injury was also caused in part by a third party. Id. at 165–166, 123 S.Ct. 1210, 155 L.Ed.2d 261. Accordingly, the court of appeals upheld the trial court's refusal to allow the jury to consider the degree of fault of anyone besides Norfolk and appellees. *Hess v. Norfolk S. Ry. Co.*, 153 Ohio App.3d 565, 2003-Ohio-4172, 795 N.E.2d 91, at ¶ 56.

{¶ 10} However, the court of appeals did not explicitly consider Norfolk's argument that the question of setoff is governed by federal law, particularly *McDermott*, supra. Instead, the court simply determined that former R.C. 2307.31(A) precluded setoff because the settling defendants were not codefendants at trial, were not adjudicated liable, and did not admit liability. Id. at ¶ 57. Norfolk moved for reconsideration, arguing that R.C. 2307.31 is inapplicable "because federal law governs the measure of damages and the right to a set-off in a FELA action." That motion was summarily denied.

{¶ 11} The cause is now before this court upon the acceptance of a discretionary appeal on proposition of law No. I only.

{¶ 12} Norfolk's first proposition of law states:

{¶ 13} "Federal common law determines the amount of set-off to be applied to a verdict for monetary damages against a non-settling railroad defendant in a FELA case."

---

3. As adjusted by the trial court, Hess's net recovery amounted to $705,746.92 ($1,070,000 minus a $129,004.11 remittitur for medical expenses minus 25 percent for his comparative negligence), Miller's amounted to $248,853.88 ($510,000 minus a $12,292.23 remittitur for medical expenses minus 50 percent for his comparative negligence), Poe's equaled $322,343.69 ($570,000 plus a $74,687.38 additur in medical expenses minus 50 percent for his comparative negligence), and Wyatt's net damages totaled $585,025.18 ($905,000 minus a $124,966.42 remittitur for medical expenses minus 25 percent for his comparative negligence).

{¶ 14} In this proposition, Norfolk is not simply asking us to hold that federal law governs whether and how a nonsettling employer in an FELA action is to receive credit for settlements with other tortfeasors. It is also asking us to decide a question not yet addressed by the United States Supreme Court, which is whether the "proportionate share rule" adopted in *McDermott* for admiralty cases applies in FELA actions. Arguing that *McDermott*'s proportionate-share rule is entirely compatible with the joint-and-several-liability rule recently announced in *Ayers* for FELA cases, Norfolk seeks a new trial to allow the jury to apportion the responsibility of the settling defendants so that Norfolk's total liability can be properly reduced. We address these issues in turn.

## I

## GOVERNING LAW

{¶ 15} Section 51, Title 45, U.S.Code provides that every common carrier by railroad shall be liable in damages to any employee who suffers work-related injury or death "resulting in whole or in part" from the railroad's negligence. In discussing the act's laudable aims, the high court explained:

{¶ 16} "Cognizant of the physical dangers of railroading that resulted in the death or maiming of thousands of workers every year, Congress crafted a federal remedy that shifted part of the ' "human overhead" ' of doing business from employees to their employers. *Tiller v. Atlantic Coast Line R. Co.*, 318 U.S. 54, 58 [63 S.Ct. 444, 87 L.Ed. 610] (1943). * * * In order to further FELA's humanitarian purposes, Congress did away with several common-law tort defenses that had effectively barred recovery by injured workers. Specifically, the statute abolished the fellow servant rule, rejected the doctrine of contributory negligence in favor of comparative negligence, and prohibited employers from exempting themselves from FELA through contract; a 1939 amendment abolished the assumption of risk defense." (Citation omitted.) *Consol. Rail Corp. v. Gottshall* (1994), 512 U.S. 532, 542–543, 114 S.Ct. 2396, 129 L.Ed.2d 427.

{¶ 17} Although the FELA is not a workers' compensation statute, in that some showing of fault is required, id. at 543, 114 S.Ct. 2396, 129 L.Ed.2d 427, "the special features of this statutory negligence action * * * make it significantly different from the ordinary common-law negligence action." *Rogers v. Missouri Pacific RR. Co.* (1957), 352 U.S. 500, 509–510, 77 S.Ct. 443, 1 L.Ed.2d 493. Specifically, "[t]he statute supplants [the common-law duty of the master to his servant] with the far more drastic duty of paying damages for injury or death at work due in whole or in part to the employer's negligence. The employer is stripped of his common-law defenses and for practical purposes the inquiry in these cases today rarely presents more than the single question whether negli-

gence of the employer played any part, however small, in the injury or death which is the subject of the suit." *Rogers* at 507–508, 77 S.Ct. 443, 1 L.Ed.2d 493.

{¶ 18} It follows that "[o]ne of the purposes of the Federal Employers' Liability Act was to 'create uniformity throughout the Union' with respect to railroads' financial responsibility for injuries to their employees." *Norfolk & W. Ry. Co. v. Liepelt* (1980), 444 U.S. 490, 493, 100 S.Ct. 755, 62 L.Ed.2d 689, fn. 5, quoting H.R.Rep. No. 1386 (1908) 3. Accordingly, the Supreme Court has long emphasized that uniform application of the FELA is "essential to effectuate its purposes" and that "[s]tate laws are not controlling in determining what the incidents of this federal right shall be." *Dice v. Akron, Canton & Youngstown RR. Co.* (1952), 342 U.S. 359, 361, 72 S.Ct. 312, 96 L.Ed. 398. Thus, "[a]s a general matter, FELA cases adjudicated in state courts are subject to state procedural rules, but the substantive law governing them is federal," *St. Louis Southwestern Ry. Co. v. Dickerson* (1985), 470 U.S. 409, 411, 105 S.Ct. 1347, 84 L.Ed.2d 303, including "principles of common law as interpreted and applied in the federal courts." *Chesapeake & Ohio Ry. Co. v. Kuhn* (1931), 284 U.S. 44, 47, 52 S.Ct. 45, 76 L.Ed. 157.

{¶ 19} "It has long been settled that 'the proper measure of damages [under the FELA] is inseparably connected with the right of action,' and therefore is an issue of substance that 'must be settled according to general principles of law as administered in the Federal courts.'" *Monessen Southwestern Ry. Co. v. Morgan* (1988), 486 U.S. 330, 335, 108 S.Ct. 1837, 100 L.Ed.2d 349, quoting *Chesapeake & Ohio Ry. Co. v. Kelly* (1916), 241 U.S. 485, 491, 36 S.Ct. 630, 60 L.Ed. 1117. In other words, "questions concerning the measure of damages in an FELA action are federal in character * * *, even if the action is brought in state court." *Liepelt*, supra, 444 U.S. at 493, 100 S.Ct. 755, 62 L.Ed.2d 689.

{¶ 20} The issue becomes, therefore, whether credit for third-party settlements is a question of "the proper measure of damages" under the FELA.

{¶ 21} The United States Supreme Court has held that an issue involves "the proper measure of damages" and is therefore governed by federal law when resolution of the issue has an appreciable effect on the employee's recovery and the employer's liability. See, e.g., *Morgan*, supra, 486 U.S. at 335, 108 S.Ct. 1837, 100 L.Ed.2d 349 (federal law governs prejudgment interest because that interest is "designed to make the plaintiff whole and is part of the actual damages sought to be recovered"). See, also, *Chesapeake & Ohio Ry. Co. v. Kelly* (1916), 241 U.S. 485, 491, 36 S.Ct. 630, 60 L.Ed. 1117 (federal law governs whether decedent's estimated future earnings should be reduced to present cash value); *Liepelt*, supra, 444 U.S. at 492–493, 100 S.Ct. 755, 62 L.Ed.2d 689 (federal law governs whether jury must be instructed that award is not subject to income tax and whether evidence of taxes on decedent's earnings was properly excluded).

{¶ 22} At least one court has held that the instant issue of whether a railroad's right to receive credit for settlements is controlled by federal rather than state law. *Schadel v. Iowa Interstate RR., Ltd.* (C.A.7, 2004), 381 F.3d 671. The availability of a credit was characterized as affecting the plaintiff's right to recover the full amount of damages from the railroad alone, regardless of the responsibility of any other tortfeasor, settling or nonsettling. Id. at 676. Since this question affects the plaintiff's ultimate recovery, the *Schadel* court held that federal law applies. The court cited the rationale in *Ayers*, 538 U.S. 135, 123 S.Ct. 1210, 155 L.Ed.2d 261, as the basis for that conclusion.

{¶ 23} We agree. Clearly, the question of whether and how a settlement with a joint tortfeasor should affect the nonsettling railroad's liability concerns the measure of damages under the FELA and, therefore, is governed by federal law. Accordingly, the judgment of the court of appeals is reversed insofar as it pertains to this issue.

## II

### EFFECT OF THIRD–PARTY SETTLEMENT ON LIABILITY OF NONSETTLING RAILROAD

#### A

#### Statutory Text

{¶ 24} In deciding the present issue, we must "turn first to the statute" for guidance. *Consol. Rail Corp. v. Gottshall* (1994), 512 U.S. 532, 542, 114 S.Ct. 2396, 129 L.Ed.2d 427. Appellees direct our attention to Section 55, Title 45, U.S.Code, which provides:

{¶ 25} "Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter [Section 51 et seq., Title 45, U.S.Code], shall to that extent be void: *Provided*, That in any action brought against any such common carrier under or by virtue of any of the provisions of this chapter, such common carrier may set off therein any sum it has contributed or paid to any insurance, relief benefit, or indemnity that may have been paid to the injured employee or the person entitled thereto on account of the injury or death for which said action was brought." (Emphasis sic.)

{¶ 26} Appellees argue that since Section 55 expressly provides for setoff in only "a single instance," i.e., where the railroad "has contributed or paid to any insurance, relief benefit, or indemnity that may have been paid to the injured employee," it necessarily "prohibits all other forms of set-off." Thus, the argument goes, setoff for third-party settlements should not be recognized in

FELA cases because it has been specifically prohibited by Congress. We cannot concur.

{¶ 27} Section 55 was primarily designed to bar the various schemes that railroads had contrived to exempt themselves from paying full damages for employee injuries, including preinjury liability releases and contractual stipulations that an employee's acceptance of benefits from the employer's relief fund would amount to a release and satisfaction of all claims against the railroad. See *Duncan v. Thompson* (1942), 315 U.S. 1, 5–6, 62 S.Ct. 422, 86 L.Ed. 575; *Philadelphia, Baltimore & Washington RR. Co. v. Schubert* (1912), 224 U.S. 603, 612–613, 32 S.Ct. 589, 56 L.Ed. 911. See, also, 40 Cong.Rec. 7917 (1906) (statement of Sen. Daniels); 42 Cong.Rec. 4527 (1908) (statement of Sen. Dolliver); H.R.Rep. No. 1386, 60th Cong., 1st Sess. (1908) 6–9, 30–75.

{¶ 28} The setoff proviso ensured that the railroad's liability under the FELA "survived the acceptance of benefits," while "permitting a set-off of any sum the company had contributed toward any benefit paid to the employee." *Schubert,* 224 U.S. at 613, 32 S.Ct. 589, 56 L.Ed. 911. The proviso "in part codifies the common law collateral source rule which prevents a tortfeasor (the employer) from reducing its liability by payments that the injured party (the employee) has received from sources collateral to the tortfeasor." *Folkestad v. Burlington N., Inc.* (C.A.9, 1987), 813 F.2d 1377, 1380.

{¶ 29} Under common law, a tort defendant is generally entitled to set off the full amount of compensation that the plaintiff receives from benefit sources affiliated with that defendant. "For example, if the defendant's medical pay insurance makes payments to the plaintiff for medical costs, the defendant is entitled to a credit [for those payments] against his liability." Dobbs, The Law of Torts (2000) 1060, Section 380. Section 55 modifies the common law to the extent that "the railroad is entitled to set off only the premiums [paid by the employer], not what the premiums bought [for the plaintiff]." *Blake v. Delaware & Hudson Ry. Co.* (C.A.2, 1973), 484 F.2d 204, 207 (Friendly, J., concurring).

{¶ 30} The setoff proviso differs, therefore, from the collateral-source rule, as it permits a premiums-only reduction for employer-purchased benefits. Viewing Section 55 in this context, we hold that it does not prohibit an FELA employer from receiving a setoff for amounts paid in settlement by a fellow tortfeasor.

{¶ 31} It is well established at common law that apart from the collateral-source rule, a partial satisfaction received from one of two joint tortfeasors serves to diminish the liability of the nonsettling defendant. Dobbs, supra, at 1082–1085, Section 388 (credits to nonsettling tortfeasors); 3 Harper, James & Gray, The Law of Torts (1986) 36–37, Section 10.1 (earlier satisfaction by one cotortfeasor reduces liability of others). See, also, Prosser & Keeton on Torts (5th Ed.1984) 333, 335–336, Section 49; Annotation, Manner of Crediting One Tortfea-

sor with Amount Paid by Another for Release or Covenant Not to Sue (1964), 94 A.L.R.2d 352.

{¶ 32} In *Lucht v. Chesapeake & Ohio Ry. Co.* (W.D.Mich.1980), 489 F.Supp. 189, the injured worker successfully argued that Section 55 precluded the railroad from setting off certain no-fault collateral benefits, but conceded that the railroad is entitled to set off amounts received by the employee under a prior settlement with another tortfeasor. In *Downer v. CSX Transp., Inc.* (1998), 256 Va. 590, 595–597, 507 S.E.2d 612, the Supreme Court of Virginia found that Section 55 does not apply to prohibit a railroad from setting off against the judgment amounts already received by the employee in settlement with a second tortfeasor.

{¶ 33} We conclude that Section 55, Title 45, U.S.Code does not prohibit the credit Norfolk seeks.

## B

### Federal Common Law

{¶ 34} But the question remains whether federal common law precludes such a credit in FELA actions. *Gottshall,* supra, 512 U.S. at 558, 114 S.Ct. 2396, 129 L.Ed.2d 427 (Souter, J., concurring). The act itself does not address the effect of a plaintiff's settlement with nonrailroad tortfeasors on the amount of recovery from a nonsettling railroad defendant. Norfolk directs us to a line of federal admiralty cases, arguing that this authority has historically been relied upon in FELA cases and offers a helpful guide to the federal common law on the setoff issue in this case. Norfolk points out that *Ayers* explicitly cited admiralty cases to support its conclusion that joint and several liability applies to FELA cases. Id., 538 U.S. at 163–164, 123 S.Ct. 1210, 155 L.Ed.2d 261.

{¶ 35} Before *McDermott,* 511 U.S. 202, 114 S.Ct. 1461, 128 L.Ed.2d 148, the federal circuits oscillated between two alternatives in admiralty cases: (1) providing the nonsettling defendant with a reduction of the judgment by the comparative share of fault attributable to the settling defendant (the proportionate-share credit) and (2) giving the nonsettling defendant a setoff for the actual dollar amount of the settlement (the pro tanto or dollar-for-dollar credit). See, e.g., *Self v. Great Lakes Dredge & Dock Co.* (C.A.11, 1987), 832 F.2d 1540, 1547–1548 (pro tanto approach); *Martin v. Walk, Haydel & Assoc., Inc.* (C.A.5, 1984), 742 F.2d 246, 249 (proportionate-share method).

{¶ 36} In *McDermott,* the Supreme Court granted certiorari to settle the question of "how a settlement with less than all of the defendants in an admiralty case should affect the liability of nonsettling defendants." Id., 511 U.S. at 207, 114 S.Ct. 1461, 128 L.Ed.2d 148. The court began with the premise that "when a

plaintiff settles with one of several joint tortfeasors, the nonsettling defendants are entitled to a credit for that settlement." Id. at 208, 114 S.Ct. 1461, 128 L.Ed.2d 148. In analyzing the question of how that credit should be calculated, the court adopted the proportionate-share rule. The court reasoned that when a plaintiff settles with one of the tortfeasors, "the plaintiff's recovery against the settling defendant has been limited not by outside forces, but by its own agreement to settle. There is no reason to allocate any shortfall to the other defendants, who were not parties to the settlement." (Footnotes omitted.) Id. at 220–221, 114 S.Ct. 1461, 128 L.Ed.2d 148.

{¶ 37} While Norfolk contends that its liability in this case should be recalculated in accordance with the principles in *McDermott*, it has been unable to muster a single case decided before or after *McDermott* in which the proportionate-share credit was applied to a claim arising under the FELA. In fact, at least one federal circuit has held that *McDermott*'s proportionate-share approach to settlements is inconsistent with the FELA's recovery-facilitating purposes and that the pro tanto approach "is the correct one for a FELA case." *Schadel*, supra, 381 F.3d at 678.

{¶ 38} Nevertheless, Norfolk argues that FELA jurisprudence is derived in large part from admiralty law and that admiralty courts have applied the proportionate-share rule. None of the cases cited by Norfolk, however, so much as allude to the FELA or to any FELA-related decision. And as we will explain, the language of the FELA itself compels rejection of the proportionate-share rule. We therefore decline Norfolk's invitation to adopt admiralty principles in this case. The FELA must be our guidepost.

{¶ 39} Therefore, we find *Ayers*, 538 U.S. 135, 123 S.Ct. 1210, 155 L.Ed.2d 261, to be the more useful authority. While it does not address the narrow issue presented here—the effect of a settlement on nonsettling defendants—it is an FELA case and therefore analyzes its related issues in the very specific FELA context occupied by the instant case.

{¶ 40} In *Ayers*, 538 U.S. 135, 123 S.Ct. 1210, 155 L.Ed.2d 261, six plaintiffs brought an FELA action against Norfolk, their former employer, alleging that Norfolk had negligently exposed them to asbestos, which caused them to contract the occupational disease asbestosis. Norfolk requested an instruction directing the jury to apportion damages between Norfolk and other non-FELA employers who may have contributed to the plaintiffs' disease. The trial court instructed the jury, however, not to make a deduction for the contribution of nonrailroad asbestos exposures, but to assess full liability against Norfolk if it found that Norfolk's negligence contributed, however slightly, to the plaintiffs' injuries. The jury returned total damage awards for each plaintiff, some of which were reduced

for the claimants' comparative negligence from smoking and for settlements with non-FELA entities.[4]

{¶ 41} In finding that "the FELA does not authorize apportionment of damages between railroad and nonrailroad causes," the Supreme Court explained that "[n]othing in the statutory text instructs that the amount of damages payable by a liable employer bears reduction when the negligence of a third party also contributed in part to the injury-in-suit." Id., 538 U.S. at 159–160, 123 S.Ct. 1210, 155 L.Ed.2d 261. The high court further explained:

{¶ 42} "The statutory context bolsters our reading, for interpreting § 1 [Section 51, Title 45, U.S.Code] to require apportionment would put that provision in tension with the rest of the statute. As recounted earlier, * * * several of the FELA's provisions expand a railroad's liability by abolishing common-law defenses that limited employees' ability to recover against their employers. Among the innovations, the Act expressly directs apportionment of responsibility between employer and employee based on comparative fault. See § 53 [Title 45, U.S.Code]. The statute expressly prescribes no other apportionment.

{¶ 43} "Essentially, then, Norfolk asks us to narrow employer liability without a textual warrant. Reining in employer liability as Norfolk proposes, however, is both unprovided for by the language of the FELA and inconsistent with the Act's overall recovery facilitating thrust." Id. at 161, 123 S.Ct. 1210, 155 L.Ed.2d 261.

{¶ 44} Finally, after recognizing that the common-law rule when the FELA was enacted was joint and several liability, the Supreme Court observed:

{¶ 45} "[R]eading the FELA to require apportionment [of damages among multiple tortfeasors] would handicap plaintiffs and could vastly complicate adjudications, all the more so if, as Norfolk sometimes suggests, * * * manufacturers and suppliers, as well as other employers, should come within the apportionment pool. See *Sinkler* [*v. Missouri Pacific RR. Co.* (1958) ], 356 U.S. [326], at 329 [78 S.Ct. 758, 2 L.Ed.2d 799] ('The cost of human injury, an inescapable expense of railroading, must be borne by someone, and the FELA seeks to adjust that expense equitably between the worker and the carrier'.). Once an employer has been adjudged negligent with respect to a given injury, it accords with the FELA's overarching purpose to require the employer to bear the burden of identifying [i.e., seeking contribution from] other responsible parties and demonstrating that some of the costs of the injury should be spread to them." Id. at 165, 123 S.Ct. 1210, 155 L.Ed.2d 261.

{¶ 46} Although *Ayers* does not directly address the specific issue in this case, we are comfortable applying its broad principles to deciding the effect of

---

4. Whether this reduction for settlements was proper under the FELA was not addressed in *Ayers*.

settlements on nonsettling FELA defendants.  It is true, as Norfolk argues, that a proportionate-share approach to settlements is not generally inconsistent with joint and several liability.  But we do not read *Ayers* as merely reaffirming the well-established principle of joint and several liability.  Instead, *Ayers* recognizes that in enacting and amending the FELA, Congress was much more concerned with assuring the employee's complete recovery than it was with fairness in loss allocation among multiple tortfeasors.  With its relaxed standard of causation and elimination of common-law defenses, the FELA builds on the premise that the inevitable loss due to workplace injuries should be absorbed by the industry.  By ensuring full recovery against a railroad whose negligence played only the slightest part in an employee's injury or death, while providing for apportionment of responsibility only between employer and employee based on comparative fault, the statute plainly envisions that the employer may be forced to shoulder disproportionate liability when other parties are partially at fault.

{¶ 47} Moreover, even if *McDermott* could properly be extended to FELA cases generally, the trial court did not err in refusing to allow the jury to apportion damages between Norfolk and the asbestos manufacturers.  The record does not reveal any argument by Norfolk that *McDermott* required setoff or that the proportionate-share rule applied to settlements.  In fact, long after Norfolk discovered the settlements, it was still insisting that it was entitled to a pro tanto, dollar-for-dollar setoff.  Thus, even if *McDermott* were applicable, the circumstances of this case would hardly justify a new trial to allow for a proportionate-share adjustment.

{¶ 48} Based on all the foregoing, we hold that Norfolk is not entitled to a proportionate-share reduction of the judgment.  Norfolk is entitled to a pro tanto credit for those settlements under federal law.  *Schadel,* supra, 381 F.3d at 678.

{¶ 49} Accordingly, the judgment of the court of appeals is affirmed in part and reversed in part, and the cause is remanded to the trial court to apply the appropriate credit.[5]

> Judgment affirmed in part
> and reversed in part,
> and cause remanded.

PFEIFER, LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

MOYER, C.J., and LANZINGER, J., concur in part and dissent in part.

---

5.  In this regard, we draw the trial court's attention to *McDermott,* supra, 511 U.S. at 211, 114 S.Ct. 1461, 128 L.Ed.2d 148, where the Supreme Court, in discussing the appellate court's application of the pro tanto method, indicated that applying a pro tanto credit for the amount of settlement after

MOYER, C.J., concurring in part and dissenting in part.

{¶ 50} I concur with the holding that federal law, rather than former R.C. 2307.31, governs the issue whether Norfolk is entitled to a setoff of settlement amounts received by the appellees.

{¶ 51} Having reviewed the controlling Federal Employers' Liability Act ("FELA") and the precedent established by the United States Supreme Court in interpreting it, I dissent, however, from the majority's holding that Norfolk is entitled to a pro tanto credit for those settlements in arriving at the final amount of the judgment against it. Both the trial court and the court of appeals disallowed a setoff. I would affirm their judgments because under federal law, Norfolk may not be credited in the amount of those payments. Recognition of a credit would exempt Norfolk from a portion of its liability to the appellees, in contradiction of the express language of the FELA.

{¶ 52} The FELA provides that "[e]very common carrier by railroad while engaging in commerce between any of the several States * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in the case of the death of such employee, to his or her personal representative * * * for such injury or death * * * *resulting in whole or in part* * * * by reason of any defect or insufficiency, due to its negligence, in its * * * equipment." (Emphasis added.) Section 51, Title 45, U.S.Code.

{¶ 53} The FELA further provides:

{¶ 54} "Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void: *Provided,* That in any action brought against any such common carrier under or by virtue of any of the provisions of this chapter, such common carrier may set off therein any sum it has contributed or paid to any insurance, relief benefit, or indemnity that may have been paid to the injured employee or the person entitled thereto on account of the injury or death for which said action was brought." (Emphasis sic.) Section 55, Title 45, U.S.Code.

{¶ 55} Thus, Section 51 expressly provides that a common carrier is liable for the amount of damages sustained by its employee if caused "in whole or in part" by the carrier. Section 55 expressly provides that a carrier cannot exempt itself from that liability by "[a]ny contract, rule, regulation, or device whatsoever." This language precludes application of any common-law rules, to the extent they

---

reducing the judgment by the comparative share of damages attributable to McDermott and the settling defendants amounted to giving the nonsettling defendant a "double credit."

may have existed at the time of the adoption of the FELA, that provide a setoff in an amount of settlement payments from a joint tortfeasor.

{¶ 56} I agree with the majority that *McDermott, Inc. v. AmClyde* (1994), 511 U.S. 202, 114 S.Ct. 1461, 128 L.Ed.2d 148, is not relevant to the issue before us. *McDermott* involved a claim by an owner of a crane against the crane's manufacturer where the plaintiff's offshore platform deck and the crane itself were damaged when the crane's main hook and supporting slings broke. It was decided based on the federal common law of admiralty. It did not involve a statutory FELA claim asserting that the negligence of a common carrier caused, in whole or in part, injury to or death of an employee. I find Sections 51 and 55, Title 45, U.S.Code, controlling in the FELA case before us. Those statutes did not apply in *McDermott.*

{¶ 57} We are instead bound to follow the latest interpretation of the FELA by the United States Supreme Court in *Norfolk & W. Ry. Co. v. Ayers* (2003), 538 U.S. 135, 123 S.Ct. 1210, 155 L.Ed.2d 261. The court unanimously concluded in *Ayers* that damages may not be apportioned among joint tortfeasors according to the degree of fault attributed to each tortfeasor. Id. at 159–166, 123 S.Ct. 1210, 155 L.Ed.2d 261. The majority recognized that the FELA expressly directs apportionment of responsibility between employer and employee based on the comparative fault of only those two parties and that the statute "expressly prescribes no other apportionment." Id. at 161, 123 S.Ct. 1210, 155 L.Ed.2d 261. It refused to "narrow employer liability without a textual warrant," id., characterizing Norfolk's view as "an untenable reading" of congressional silence on the issue of apportionment. Id.

{¶ 58} Congress did, however, specifically address the matter of setoffs where amounts have been "paid to the injured employee * * * on account of the injury or death for which said action was brought." Section 55, Title 45, U.S.Code. It authorized a setoff benefiting the employer only in those instances where the carrier has "contributed or paid to any insurance, relief benefit, or indemnity that may have been paid to the injured employee." Id. Even then, Congress provided for setoff only in the amount of premiums paid by the carrier—not the full amount of benefits received.

{¶ 59} Norfolk seeks a reduction in the final judgment of damages for which it is liable based on the fact that settlement payments by other tortfeasors were previously made to the appellees. In so doing, it asks for adoption of a rule of contribution referred to by the Seventh Circuit as "claim reduction." *In re Oil Spill by Amoco Cadiz* (C.A.7, 1992), 954 F.2d 1279, 1315. That rule provides that by "accepting a settlement from any party, the plaintiff foregoes the ability to collect from the remaining defendants any damages attributable to the settling party's share of fault." Id.

{¶ 60} A claim-reduction approach is inconsistent with Section 55, Title 45, U.S.Code. Moreover, the United States Supreme Court has on more than one occasion refused to incorporate a claim-reduction rule into federal common law when urged to do so. *Edmonds v. Compagnie Generale Transatlantique* (1979), 443 U.S. 256, 99 S.Ct. 2753, 61 L.Ed.2d 521; *Texas Industries, Inc. v. Radcliff Materials, Inc.* (1981), 451 U.S. 630, 637–638, 101 S.Ct. 2061, 68 L.Ed.2d 500 ("Some *amici* and commentators have suggested that the total amount of the plaintiff's claim should be reduced by the amount of any settlement with any one co-conspirator; others strongly disagree. * * * Regardless of the particular rule adopted for allocating damages or enforcing settlements, the complexity of the issues involved may result in additional trial and pretrial proceedings, thus adding new complications to what already is complex litigation").

{¶ 61} I am sympathetic to Norfolk's argument that denial of a setoff representing settlement amounts received by an FELA claimant could result in the claimant receiving sums exceeding the amount of damages a jury finds was sustained. However, the United States Congress and the United States Supreme Court have settled that issue. In *Ayers*, the court observed that the "FELA's express terms, reinforced by consistent judicial applications of the Act, allow a worker to recover his entire damages from a railroad whose negligence jointly caused an injury (here, the chronic disease asbestosis), thus placing on the railroad the burden of seeking contribution from other tortfeasors." Id., 538 U.S. at 141, 123 S.Ct. 1210, 155 L.Ed.2d 261. Moreover, the possibility that a plaintiff might recover sums in excess of a jury award in an FELA case has long existed based on application of the traditional collateral-source rule, which Section 55 largely preserves. As emphasized by the court in *Ayers*, the issue whether public policy warrants FELA reform, including reform in the application of the FELA to asbestos cases, is a matter for Congress and not the courts. Id., 538 U.S. at 166, 123 S.Ct. 1210, 155 L.Ed.2d 261.

LANZINGER, J., concurs in the foregoing opinion.

---

Kevin E. McDermott and Mary Brigid Sweeney, for appellees Ralph E. Seaford and Horace T. Thomas.

Gallagher, Sharp, Fulton & Norman, Kevin C. Alexandersen, Monica A. Sansalone, and Holly M. Olarczuk–Smith; Burns, White & Hickton, L.L.C., and David A. Damico, for appellant.

Squire, Sanders & Dempsey, L.L.P., Charles F. Clark, and Robin G. Weaver, urging reversal for amicus curiae, Association of American Railroads.